# OCTOBER TERM, 1896.

110    597
j156    ¹507
j156    ¹508

## BRUSH *v.* BEECHER.[1]

1. LEASE — PERPETUITIES — COVENANT FOR RENEWALS — CONSTRUCTION.

A lease will not be construed as creating a perpetuity by renewal at the option of one of the parties, unless such appears from clear and unequivocal language to have been the intent.

2. SAME.

A lease for a term of years, providing that the lessors, their "executors, administrators, or assigns," may at their election, at the end of the term, purchase buildings erected by the lessee at a valuation not to exceed a specified amount, and that, if they elect not to make such purchase, the lease shall continue for a similar term at a rental value to be determined by a reference, at the expiration of which, and of each succeeding term of like length, the same right shall exist, and the same result follow its non-exercise, and that if the lessee, his "executors, administrators, or assigns," do not keep all the conditions of the lease, it shall immediately cease and be utterly void,—does not provide for any renewals beyond the lives of the parties thereto.

Error to Wayne; Frazer, J. Submitted April 22, 1896. Decided October 6, 1896.

Alfred E. Brush presented a claim for rent in the probate court against the estate of Luther Beecher, deceased. The claim was contested by George L. Beecher and Luther S. Trowbridge, the administrators, and was disallowed, whereupon claimant appealed to the circuit court. From a judgment for defendants, claimant brings error. Affirmed.

---

[1] Rehearing denied November 17, 1896.

The following is the finding of facts made by the court before which the case was tried:

Luther Beecher died September 16, 1892. At the time of his death he was the tenant under three leases which were executed by Edmund A. Brush, the ancestor of plaintiff, one in 1848, and the others later. Each lease was for the specified term of five years, and, after the usual terms of leases, contained the following:

"And it is further covenanted by and between the parties hereto that, at the expiration of said term of five years, the parties of the first part, their executors, administrators, or assigns, shall have the right, in their election, to purchase and take of and from the party of the second part, his executors, administrators, or assigns, the buildings erected by him or them, or being on said premises, at a valuation thereof, not to exceed $10,-000, to be made by three disinterested persons, to be chosen in the usual manner, and upon such purchase to re-enter upon said premises, and the same to have again as in their former estate and right. And if the parties of the first part, their executors, administrators, or assigns, elect not to make such purchase, then this lease, at the then rental value of the premises, to be determined by a reference in the manner above set forth, and upon the other terms and conditions above set forth, shall stand continued for another term of five years. And in like manner, at every expiration of every succeeding term of five years, the same election as above reserved by the parties of the first part, their executors, administrators, or assigns, shall be had; and if the buildings and improvements, as above limited, are not purchased and taken, then this lease, at the then rental value, to be determined as above prescribed, and upon the other terms and conditions above set forth, shall stand continued for another term of five years. And that the buildings and improvements placed or made upon said premises shall remain thereon as a security for the execution of the covenants herein contained on the part of the said party of the second part, unless said lessors, or some persons authorized thereto, shall consent in writing to the removal of the same, or any part thereof: *Provided, always,*

and these presents are upon this condition, that if it shall happen that the rent hereby reserved, or any part thereof, shall be behind and unpaid after the same ought to be paid according to the reservation thereof, or if the party of the second part, his executors, administrators, or assigns, shall not well and truly observe, keep, and perform all and singular the covenants, conditions, and agreements herein contained on his and their part to be observed, kept, and performed, according to the true intent and meaning thereof, then, and in any of the said cases, immediately upon the happening thereof, this lease, and everything herein contained on the part of the parties of the first part thenceforth to be done and performed, shall cease, determine, and be utterly void, anything herein contained to the contrary notwithstanding."

At the time of Mr. Beecher's death, he was in possession of the parcels of land described in said leases, and there were situated on said land brick buildings known as the "Globe Hotel." The premises were not occupied by any person, but these buildings were locked up, and the keys were in the possession of Luther Beecher. He was the lessee of the property. After his death, Gen. Luther S. Trowbridge and George L. Beecher, a son of the deceased, were appointed administrators of his estate, and as such came into the possession of the keys to the Globe Hotel; and these keys remained in their possession until June 29, 1893, when they tendered the keys to Alfred E. Brush, who refused to receive them, but they were left on his table, in his presence, at his residence, and were not returned to the administrators. Alfred E. Brush is the son of Edmund A. Brush, deceased, and as such has succeeded to the title of his deceased father, and is owner of the fee of the land described in the leases. At the time of the death of Luther Beecher, he was paying rent under these leases to the Brush estate, or to Alfred E. Brush, the owner of the property, at the rate of $1,500 a year, but was in arrears for the year commencing July 1, 1891. Before Luther Beecher died, the executors of the Brush estate brought suit against him to recover the rent for the year commencing July 1, 1891. This suit

was revived after the death of Luther Beecher, and it terminated with the decision reported in 98 Mich. 235. After that decision the administrators of Luther Beecher paid the rent at that rate down to the 30th of June, 1893, with the exception of the city taxes which were assessed on it in 1892; said taxes amounting to $564.65. Said taxes were paid by Alfred E. Brush June 1, 1893. When the keys were tendered to Alfred E. Brush, they were left on his table; but he positively refused them, and they were not carried away because he could not force Gen. Trowbridge to carry them away, but the keys were left there. The administrators of the estate of Luther Beecher endeavored to surrender these leases at that date, and Mr. Brush refused to receive the surrender. They endeavored to terminate the leases at that date, and offered to surrender possession, and to give up all their claims to the improvements on the property. They served on Alfred E. Brush a written paper to that effect, but Mr. Brush refused to receive the surrender so offered. The administrators of the estate of Luther Beecher have refused to pay the following installments of rent, which became due on these leases subsequent to June 30, 1893, viz. :

| | | | |
|---|---|---|---|
| 1893. | | | |
| July 1. | To one quarter's rent in advance | | $375 |
| Oct. 1. | To one quarter's rent in advance | | 375 |
| 1894. | | | |
| Jan. 1. | To one quarter's rent in advance | | 375 |
| April 1. | To one quarter's rent in advance | | 375 |
| July 1. | To one quarter's rent in advance | | 375 |
| Oct. 1. | To one quarter's rent in advance | | 375 |
| 1895. | | | |
| Jan. 1. | To one quarter's rent in advance | | 375 |
| | | | $2,625 |

Counsel for the claimant and appellant insisted that the leases were still in force, and that he was entitled to recover from the Beecher estate the above amount of rent, with interest on each installment to the date

of judgment. Counsel for the Beecher estate insisted that the leases were terminated by the surrender of possession (without making any claim for improvements) made by the administrators of the estate of Luther Beecher on June 29, 1893, and also insisted that the leases had terminated by their own provisions, in consequence of nonpayment of rent, and also that said leases were void, both for want of mutuality and as against public policy, and also insisted that Alfred E. Brush, being neither administrator, executor, nor assignee of Edmund A. Brush, but acting as heir of the latter, showed no title to recover this rent. The circuit judge held that the covenants for perpetual renewals at option of the lessor were void, as against public policy, and that claimant was not entitled to recover any rent accruing from and after July 1, 1893, and entered judgment accordingly against the claimant.

*Fred A. Baker,* for appellant.

*Alfred Russell* and *John Atkinson,* for appellees.

GRANT, J. (*after stating the facts*). The material parts of the leases being the same, we will discuss the first lease only. The position of the plaintiff is that this is a lease for a term of years, with covenants for perpetual renewals, and is equivalent to a demise in fee, and therefore valid. The position of the defendants is:

1. That the lease has ceased and is terminated by the nonpayment of rents.

2. That, if it is not so determined, it is void for want of mutuality.

3. That, if it be construed as a lease for perpetual renewals, it is void as against public policy.

4. That it was not intended by the original parties to it to be a lease in perpetuity.

There are authorities which hold that such leases are against public policy. In *Morrison* v. *Rossignol,* 5 Cal.

64, the court held that: "A covenant for a lease to be renewed indefinitely at the option of the lessee is, in effect, the creation of a perpetuity. It puts it in the power of one party to renew forever, and is therefore against the policy of the law." In principle, there is no difference between an endless succession of five-year estates, and an endless succession of life estates, which the law prohibits. This lease is not a grant in fee, reserving rent, as the Van Rensselaer leases in the State of New York have been held to be. *Van Rensselaer* v. *Hays*, 19 N. Y. 68 (75 Am. Dec. 278); *Van Rensselaer* v. *Ball*, 19 N. Y. 100. In the present case the lease, aside from the clause for renewal at option of lessor, is the usual one for a term of years. The landlord, exercising his option to terminate, limited his liability to pay for buildings and improvements to $10,000. The land is situated near the center of the business part of a great and growing city. The lessor cannot improve it, and there is no inducement for the lessee to do so. If the lessee should build expensive buildings, it would furnish an inducement for the lessor to terminate the lease; and, if the improvements do not amount to that sum, yet another person may be willing to pay more rent, and make an agreement with the lessor to terminate the lease and oust the tenant. It must be conceded that such an arrangement prevents the free use, sale, and circulation of property which is in accord with the spirit of this country. It is clear that this is not an absolute lease for such length of time as, under the New York decisions, amounts to a transfer of the fee, and in no sense restricts or interferes with that use and sale of the land, and the interest of the lessor and lessee, in which the public are rightfully interested. It is, however, unnecessary to discuss this question further, or to determine the validity of a lease which in unequivocal language provides for perpetual renewals. We are of the opinion that this lease does not so provide. In one point the authorities are harmonious, viz., that the law does not

favor perpetua. leases of the character claimed for this one, and the intention to create one must appear in clear and unequivocal language. It cannot be left to inference. Courts will, if possible, so construe the writing as to avoid a perpetuity by renewal. *Muhlenbrinck* v. *Pooler*, 40 Hun, 526; *Bruce* v. *Bank*, 79 N. Y. 154 (35 Am. Rep. 505); *Rutgers* v. *Hunter*, 6 Johns. Ch. 215; *Piggot* v. *Mason*, 1 Paige, 412; *Carr* v. *Ellison*, 20 Wend. 178; *Syms* v. *Mayor, etc., of New York*, 105 N. Y. 153, 50 N. Y. Super. Ct. 289.

We think it clearly appears "from the four corners of the instrument" that the parties did not intend to provide for perpetual renewals. The writing bound only Mr. Brush, his administrators, executors, and assigns, and Mr. Beecher, his administrators, executors, and assigns. It bound the heirs of neither party. See Rawle, Cov. §§ 309, 310. The learned counsel for the plaintiff appears to recognize this, and admits that the heirs of Mr. Beecher are not personally bound, but that under 2 How. Stat. §§ 5937, 5940, the heirs of Mr. Beecher are liable only so long as they have assets in their hands which came from his estate. These sections, and other provisions of chapter 224, 2 How. Stat., refer to contingent claims, and such claims must first be proven against the estate. This necessarily involves keeping the estate open indefinitely,— a condition for which the statute does not provide. It is held in *Quain's Appeal*, 22 Pa. St. 510, that a ground-rent covenant does not survive against the administrators, except as to the rents which accrued in the lifetime of the deceased. It is reasonable to hold that the word "heirs" was left out of this lease for the reason that neither party desired to make it binding upon his heirs. It would be absurd to hold that either party understood that he was executing an instrument which would require his estate to be kept indefinitely in the hands of executors. The duty of administrators is to settle estates, and divide them among the heirs. They cannot carry on the business in which the deceased was engaged, except at their

peril; and, even where a will provides that executors may continue the business of their testator, they cannot be compelled to do so. Williams, Ex'rs, 1762, 1791.

The rent is reserved to the lessor, his administrators, executors, and assigns, and not to his heirs. It is also of some significance that the lease contains no provision for re-entry by the lessor in case of nonpayment of rent, which is usually found in leases, but only in case he shall elect to take the buildings and terminate the lease. The language is that upon failure to pay the rent the lease shall immediately cease and terminate, and be utterly void, anything to the contrary therein contained notwithstanding. In case of failure to pay rent, the lessee would lose his buildings, for they were a part of the realty. *Kutter* v. *Smith*, 2 Wall. 491. If Mr. Beecher had refused to appoint arbitrators to readjust the rent, or if the arbitrators had failed to agree, the lease contains no provision by which the old lease shall stand, or the former rate of rent continue. Mr. Beecher might lose his improvements in the event of his refusal to appoint arbitrators, and Mr. Brush's remedy at law for damages would be ample. Under the authorities above cited, Mr. Brush could not maintain a suit in equity to enforce the specific performance of his contract. We do not think that this contract should be construed to provide for perpetual renewals, or to extend beyond the lives of the parties to it. It was terminated by their death.

It follows that the judgment must be affirmed.

MONTGOMERY, HOOKER, and MOORE, JJ., concurred. LONG, C. J., did not sit.