### TURNER, executrix, *v.* PEACOCK *et al.*

1. A deed to realty, in addition to conveying certain described lands, contained also a clause providing that for a stated consideration the grantor did " sell unto [the named grantee], its successors and assigns, his good will and the perpetual right, option, and privilege to purchase an additional fifty acres of land.[the land described]. For the additional

consideration to be paid by [the named grantee] upon the exercise of said option so to purchase said land " for a fixed sum, the grantor agreed to bind himself, his heirs, administrators, and assigns, to make to his successors and assigns title in fee simple to the additional fifty acres of land. *Held,* that, there being no time limit within which the option should or could be exercised, it was invalid and void.

2. The option being void and constituting no defect in the title of the complainants nor a cloud on their title, false representations in regard to it by the agent of the vendor afford no ground for rescission of the contract of purchase.

3. Authority given by a testator in his will for the executrix to sell lands without an order of court does not dispense with the necessity for advertising and a public sale. It goes no further than dispensing with the necessity for an order to sell.

4. The purchasers of land, having accepted a deed from the executrix of the deceased owner of the land, which is inoperative to convey title because the land was sold at private sale without authority under the will for such sale, will not be entitled to rescission unless induced to accept such conveyance by false representations as to the right of the executrix under the will to sell at private sale; especially where deeds from all the heirs and legatees of the testator were obtained and offered to the purchasers, which had the effect of ratifying the sale and making good the title of the purchasers.

5. Attorney's fees specified in a promissory note can be collected only on the statutory terms; and the defendant in the court below, who sought to recover upon certain notes set forth in the cross-petition, does not bring herself within the terms of the statute allowing attorney's fees in certain cases.

Nos. 2797, 2798. JULY 12, 1922. REHEARING DENIED SEPTEMBER 20, 1922.

Equitable petition. Before Judge Malcolm D. Jones. Bibb superior court. July 29, 1921.

A petition for rescission and prayer for accounting was filed on November 9, 1920, by complainants in the court below, Peacock, Joel, and Scott, against Mrs. Alice L. Turner, executrix of the estate of A. W. Turner, deceased. The petition alleged, in substance, that on January 1, 1920, they entered into negotiations with one Frank Turner, agent and representative of Mrs. Alice L. Turner, executrix, for the purchase of a plantation lying in Monroe and Bibb counties, consisting of 940 acres of land, for which complainants paid $6,204, and gave their promissory notes, due January 1, 1921, 1922, 1923, and 1924, for the balance. The petition alleged, that Frank Turner, acting as agent and representative of Mrs. Alice L. Turner, represented to complainants that the title to said plantation was good in Mrs. Alice L. Turner, executrix, and advised them that it was useless to pay out money

for an examination of the records; that he further represented to complainants that A. T. Small Quarries Company had a verbal option to purchase a part of said land, consisting of 50 acres, on which there was located a quarry; that said Small Quarries Company was very desirous of acquiring this quarry, and would pay the complainants the sum of $10,000 for said 50 acres of land should complainants purchase said property and desire to sell at any time, that he further represented to complainants that the option was not in writing and would not be binding on complainants should they make such purchase, but held out the fact that Small wanted the quarry and would pay $10,000 for it, as an inducement for complainants to make the purchase of the plantation; that Frank Turner knew, at the time he made such representation, that there was a written option for this 50 acres of land whereon the quarry was located, and he further knew that said option was of record, and that the Small Quarries Company had paid to A. W. Turner, deceased, the sum of $3,000 as a consideration of said option. The petition further alleged that these 50 acres of land were the most valuable part of the entire plantation, and that they were looking towards its development as a quarry.

The defendant filed an answer denying the material allegations of the petition; and by way of cross-petition defendant sought to recover attorney's fees on the notes, by giving the required ten days notice. Defendant also set up in her cross-petition that deeds from the heirs at law of A. W. Turner, deceased, had been tendered two months or more after the bill for rescission was filed by complainants, and that whatever defect may have appeared in the title into Mrs. Turner was cured by the offering of these deeds. Complainants demurred and moved to strike those parts of defendant's answer and cross-bill which sought to recover attorney's fees, and which sought to cure the failure of title in the executrix by the tendering of deeds of the heirs several months after the bill for rescission had been filed. The court overruled this demurrer; and this ruling was excepted to pendente lite by the complainants.

The jury found for the complainants for rescission, and returned a verdict in their favor in the sum of $2,748.84. The defendant sued out a bill of exceptions, assigning error upon the overruling of her motion for a new trial; and the plaintiffs filed

a cross bill of exceptions assigning error upon their pendente lite bill of exceptions.

*Jordan & Moore,* for plaintiff in error in main bill.

*E. B. Weatherly, W. M. Smith, John J. Strickland,* and *Hall, Grice & Bloch,* contra.

Beck, P. J. (After stating the foregoing facts.)

1. In the second ground of the amendment to the motion for a new trial error is assigned upon the charge of the court which authorized the jury to consider the question as to whether or not the representations of the agent of Mrs. Turner, the executrix, in regard to the option upon the land were fraudulently made, and the further instruction that if they were fraudulently made such fraud would invalidate the sale of the land by the executrix. Other assignments of error in the motion for new trial and in the cross-bill of exceptions raised the question as to whether or not the option in writing was void; and whether or not, if it was void, the fraudulent representations in regard to its existence would entitle the complainants to a rescission of the trade. The option in question is to be found in a clause of an instrument of writing, which is in part a conveyance of certain lands and in part a contract between A. W. Turner, the defendant's testator, and the A. T. Small Quarries Company. That part of this instrument reads as follows: "Said Turner, for and in consideration of the additional sum of thirty-two hundred and seven ($3207.00) dollars in hand paid, receipt of which is hereby acknowledged, hereby grants, bargains, and sells unto said Quarries Company, its successors and assigns, his good will and the perpetual right, option, and privilege to purchase an additional fifty (50) acres of land shown upon said plat hereto attached, lying on the west side of said right of way and more fully described as follows: [the description of the 50 acres]. For the additional consideration to be paid by said Quarries Company upon the exercise of said option so to purchase said land of six thousand ($6,000.00) dollars, upon payment of which said Turner hereby binds himself, his heirs, executors, administrators, and assigns, to make and deliver to said Quarries Company, its successors and assigns, good and sufficient title in fee simple to said additional fifty (50) acres of land." The court below held that this option was void; and such seems to be the view taken of instruments like this, containing an option,

by both text-writers and by courts, where the question has arisen. We are not able to find any case upholding an option that gives unlimited time for the exercise of the option, as do the terms contained in this paper. ". Options given to purchase real estate are regarded as having the effect of creating future interests depending on the contingency of the exercise of the option. Hence, if there is a possibility that the option may not be exercised within the limits of time allowed by the rule against perpetuities, the option will fall under the ban of this rule." 21 R. C. L. 303. And it is also said, in this connection.: " If a contract is made for one year which provides for its extension for another year, and so on from year to year by the payment of a stipulated sum annually, it will be invalid under the rule against perpetuities." The cases in which this question has arisen do not seem to be numerous, but they are practically unanimous in announcing a doctrine similar to that found in the text quoted. Certain cases decided by the Court of Appeals of Maryland, dealing with certain principles affecting lease systems, do not necessarily conflict with what is 'ruled; in the cases to which we here have reference; but if they do, they will have to yield to what seems to be the sounder view and the one supported in the cases first referred to. In the case of Starcher *v.* Duty, 61 W. Va. 373 (56 S. E. 524, 9 L. R. A. (N. S.) 913, 123 Am. St. R. 990), the Supreme Court of Appeals of West Virginia had under consideration the question of the validity of a written contract which in substance was as follows; The contract, dated April 5, 1902, was signed by Jeff Duty and Elizabeth, his wife, by their marks, and was acknowledged before Philip Hager Jr., a notary public, April 7, 1902. The contract acknowledged a consideration of $11 paid down, and was conditioned on the optionees electing to take and accept the land on or before April 5, 1903, and in that event that they should thereupon pay the optionors at the rate of $6 per acre for all the land, to be ascertained by a survey made in the usual way at the expense of the purchasers, to whom the sellers were to execute an apt and proper deed of general warranty, clear of all incumbrances. The contract also contained the proviso that Starcher Brothers might, prior to April 5, 1903, pay to the first parties, or deposit " to their credit in the Huntington National Bank, their heirs, assigns, or personal representatives, the sum of $10.00, which shall constitute

and be in full consideration for the extension of this option and agreement for the period of one year from said last-mentioned date, and upon payment thereof this contract and option shall be so extended." The instrument contained the further provision that " said Starcher Brothers may have this option and agreement so extended from year to year upon the payment of said sum annually as aforesaid." By the last clause of the contract also: " It is understood that the terms and stipulations of this agreement shall extend and apply to the heirs, assigns, executors, and administrators of both parties hereto." In the course of the opinion it was said: " This brings us to the consideration of the pivotal question in this case, viz., the validity or invalidity of the contract. It is claimed by the defendants that the provision of the contract, ' and said Starcher Brothers may have this option and agreement so extended from year to year upon the payment of said sum annually as aforesaid,' and which provision by the terms of the contract is made to ' extend and apply to the heirs, assigns, executors, and administrators of both of the parties hereto,' creates such a present right to an interest in the land which may arise at a period beyond the legal limit, as to bring the contract within the rule against perpetuities, and that the contract is therefore absolutely void and unenforceable, at law or in equity, at any period of its existence. On the other hand, the plaintiffs insist, in the first place, that Duty and wife, by accepting the second payment of ten dollars paid into bank to their credit prior to April 5, 1904, thereby estopped themselves from asserting that the contract was to run only two years; second, that it is permitted to the owner by contract to suspend his right of disposition of his property only so it shall not offend against the law of perpetuities; and that, to bring the contract within this rule, the alienation must be restrained for the entire period of the life of the owner and twenty-one years and a fraction thereafter, and which they claim is not the legal effect of the contract. The authorities relied on in support of this theory are Lowther Oil Co. v. Guffey, 52 W. Va. 88 [43 S. E. 101], Rease v. Kittle, 56 W. Va. 269 [49 S. E. 150], Brush v. Beecher, 110 Mich. 597 [68 N. W. 420, 64 Am. St. R. 373], and other like cases relating to contracts for the perpetual renewal of leases. It is claimed that this contract partakes of the nature of such lease contracts. The answer to this argument,

however, is that leases of land like those considered in the authorities cited create vested estates in the lessees, and the covenant for perpetual renewal is one which runs with the land, without any restraint upon the right of alienation by the lessor of his property subject to the lease; and hence the authorities relied on are inapplicable. Gray's Rule Against Perp. § 230."

In the case of Barton v. Thaw, 246 Pa. 348 (92 Atl. 312, Ann. Cas. 1916D, 570), the written instrument under consideration was a deed by which the grantor conveyed the coal and other minerals underlying certain lands to two named grantees, but subsequently conveyed the same to a third person. Both deeds contained the following clause: " And in case the said parties of the second part, their heirs or assigns, should at any future time whatsoever desire to purchase any of said land in fee simple, then the said parties of the first part, for themselves, their heirs or assigns, hereby covenant and agree to sell and convey the same to the said parties of the second part, their heirs or assigns, at a price not exceeding one hundred dollars per acre." The judge before whom the case involving the construction of this paper was tried filed an opinion, which was in part as follows: " It is conceded by counsel that the case presents for the first time to the courts of Pennsylvania the question whether an option or right to purchase land, unlimited in point of time, violates the rule against perpetuities, and therefore is void and inoperative as against the land. As commonly understood, although not technically exact, a perpetuity is something which may last forever, and the rule against perpetuities is a rule that prevents certain existing conditions from continuing for an indefinite period." And the court held that the option here given was void, and supported the holding in a lengthy opinion. Upon appeal the Supreme Court, in affirming the judgment of the court below, said: " The case turns very largely upon the character of the interest in the surface which the optionees took under the covenant. If it was a present, fixed, and vested interest in the land, the rule against perpetuities would have no application. But is a mere option to purchase land, unlimited as to time and indefinite in duration, which may be exercised in 10 years, or in 100 years, or in 1,000 years, or which may never be exercised at all, depending upon the wish or pleasure of the optionee, a present vested interest? To ask this question

would seem to answer it. In no proper legal sense can a mere privilege of exercising a future right to purchase be deemed a present vested interest in land. The optionees may never exercise their option, and, failing to do so, they would never acquire a vested interest in the land. . . The underlying principles which control in cases of this character were very fully discussed in London & Southwestern Ry. Co. v. Gomm, L. R. 29 Ch. D. 562; Winsor v. Mills, 157 Mass. 362 [32 N. E. 352]; Starcher v. Duty, 61 W. Va. 373 [supra]. We think the reasoning of these cases is unanswerable, and they are cited with approval by this court." Without holding that the case falls technically within the rule against perpetuities, we agree with the courts from which the extracts above quoted are taken, and the authorities upon which they are based, that the option in this case is void. We do not think that it created a covenant running with the land, nor did it create any interest in the land in the Small Quarries Company which could take effect under the rule against perpetuities as laid down in our code.

2. It follows from what we have said, that the court properly held that the option to purchase was void for the reasons stated. That being true, the court erred in submitting to the jury the question as to whether or not the representations in regard to the non-existence of a written option were fraudulently made, and acted upon by the plaintiffs, the purchasers of the property. The option was void on its face, and its existence constituted no defect in the title, nor was it a cloud upon the title. It could not operate to the injury of the purchasers. Counsel for the defendants in error in the main bill of exceptions, while insisting that the option was not void, contend further that, even if it was void, the representations as to its non-existence constitute such fraud as to give them the right to a rescission; that it would be a cloud upon the title, and might involve them in a lawsuit; that they, of course, did not desire to purchase property which would involve them in a lawsuit. We do not think these contentions show a right to a rescission. It will not be assumed that the holders of a void option, one that conferred no right upon the holders, would bring a suit based upon such a written instrument. Of course there is a possibility of a lawsuit, but it is a bare possibility; and such is incurred in the purchase of any property. No injury has accrued

to the purchasers because of the representations of the agent of the vendor, nor can any accrue in the future. Even if equity could grant the relief sought, where no injury had accrued, it will not grant the relief because of the mere possibility of a lawsuit which would involve expense, where the result of the lawsuit must be in favor of those seeking the relief.

3. Exception is taken to the following charge· of the court: " I charge you that under the will of A. W. Turner his executrix had no right to make a private sale of this land, and that her deed purporting to do so does not convey the title thereto." It is insisted by the plaintiff in error that the executrix of A. W. Turner did have power to convey the land at private sale, and the following clause in the will is relied upon as showing that such power was conferred: " That all of my personal property be reduced to cash by my executrix, hereinafter mentioned, either at public or private sale as such executrix may prefer, without any order of court, and that my land and houses may be rented out or sold as my executrix may wish. My executrix can sell or rent any of my land or houses without any order of court." The court properly held that this item of the will did not confer upon the executrix named the right to make a private sale of the land. The clause quoted in the first sentence vests the executrix named with the authority to sell all the personal property of the testator at public or private sale, and also gives her authority to either rent the land or sell it, " as my executrix may wish." But the expression, " as my executrix may wish," did not relate to the manner of sale, but conferred the right to elect whether to sell or rent. And the last sentence merely gives the right to sell without any order of court; but that did not dispense with the necessity of a public sale.

4. While the executrix could not, under the terms of the will, sell at private sale, we are of the opinion that ·where she did actually so sell and the purchasers knew that they were purchasing from the executrix, and her deed contained a warranty clause, the purchasers would be bound to pay the notes given as the consideration for such a deed, unless misled by fraudulent representations of the executrix or her agent. They knew that they were dealing with an executrix; they knew that there was a will, and they knew the executrix would not be authorized to sell at private sale unless the power was granted in the will; and the

slightest diligence would have required an examination of the terms of the will. If fraudulent representations were made as to the right of the executrix to convey this property at private sale, and the purchasers relying upon such misrepresentations were misled by them, they might be excused for failure to make investigation and examination. And it is earnestly insisted here that they were misled by fraudulent misrepresentations made by the agent of Mrs. Turner; and these misrepresentations are pleaded in the petition for rescission. But the only statement made in regard to the title which could be relied upon to show misrepresentations by the agent of the executrix conducting the negotiations was the statement that the title was all right. Fairly construed, we take it that this statement merely meant that the title of the estate to the property was good. And moreover, this statement made by the agent, if it had related to the executrix's authority to make a private sale, could have been nothing but a conclusion. We do not think that the fact that the executrix sold at private sale and that in consequence a warranty deed was inoperative to convey, is ground for rescission here; especially in view of the fact that the deeds from all the heirs which were tendered had the effect of ratifying and confirming the sale, even though those deeds were made after the suit for rescission was begun.

5. Attorney's fees specified in the notes can be collected only on the statutory terms. The statute in regard to attorney's fees reads as follows: "Obligations to pay attorney's fees upon any note or other evidence of indebtedness, in addition to the rate of interest specified therein, are void, and no court shall enforce such agreement to pay attorney's fees, unless the debtor shall fail to pay such debt on or before the return day of the court to which suit is brought for the collection of the same: Provided, the holder of the obligation sued upon, his agent, or attorney notifies the defendant in writing, ten days before suit is brought, of his intention to bring suit, and also the term of the court to which suit will be brought." Civil Code, § 4252. Applying that statute to the facts of the case, the defendant in the court below, who filed a cross-bill asking judgment on the notes, was not entitled to attorney's fees, and the assignment of error in the cross-bill of exceptions upon the judgment refusing to strike that part of the cross-bill which sought the recovery of attorney's fees was error.

*Loftis* v. *Alexander,* 139 *Ga.* 346 (77 S. E. 169, Ann. Cas. 1914B, 718).

What is said above, though all the assignments of error in the main bill and cross-bill are not there dealt with, disposes of the controlling questions raised in the record.

*Judgment reversed on the main bill of exceptions and on the cross-bill. All the Justices concur.*