GEYER *v.* LIETZAN ET AL.

[No. 28,856. Filed January 23, 1952. Rehearing denied March 7, 1952.]

*Ralph S. Thorsen, James J. Clark* and *George P. Burgess,* all of Hammond, for appellant.

*Byron E. Bamber* and *Straley Thorpe,* both of Hammond, for appellees.

DRAPER, J.—On April 20, 1945 Herman J. Holtz and his wife owned, as tenants by the entirety, certain improved real estate in the city of Hammond. On said date they leased this property to appellant for a period of two years beginning May 1, 1945 and ending April 30, 1947.

Pursuant to said lease appellant entered into possession of said property May 1, 1945. On July 10, 1946 Lily Holtz died. On March 27, 1947 appellant served notice upon Herman J. Holtz of his intention to exercise his option to renew said lease for a period of two years. On January 19, 1948 Herman Holtz died, leaving as his sole heirs at law his son Howard J. Holtz and his daughter, Margaret E. Lietzan. On March 25, 1948 said Howard J. Holtz conveyed his interest in said real estate to his said sister. On December 14, 1948 Margaret E. Lietzan and her husband Ernest W. Lietzan conveyed this property to Byron E. Bamber as trustee, and on the same day he reconveyed the property to appellees as tenants by the entirety. At all times since they have been the owners of this property.

On March 22, 1949 appellant served notice on appellees of his intention to exercise his option to renew the lease for another two year period from May 1, 1949 to April 30, 1951.

On May 6, 1949 appellees commenced this action in the Superior Court of Lake County, Room 5. Their complaint alleged their ownership and right to immediate possession of the property, the unlawful detention by appellant to appellees' damage in the sum of $1,000. The complaint was accompanied by affidavit for immediate possession. A writ of possession was issued. Appellant posted bond and has ever since retained possession.

Appellant, by his amended answer, set up the matters hereinbefore referred to regarding the execution of the lease which was made a part of said answer. It further alleged he exercised his option in 1947 and the service of notice of his intention to exercise his option on March 22, 1949. It further averred he had paid all rents due and fulfilled all of his obligations

under the lease and that appellees were bound by and have ratified the terms of the lease.

Appellees, by their reply, admitted all of the allegations of the answer except they denied they had adopted and ratified the lease. They admitted they refused the rent due under said lease on May 1, 1949, and that rent due on and since said date had been tendered and refused.

At the trial, in addition to facts herein set out, there was evidence as to the rental value of the property.

Trial to the court resulted in finding and judgment that appellees were entitled to immediate possession of said property and damages in the sum of $1360.

The error assigned here is the overruling of appellant's motion for a new trial. The only specifications of that motion relied on by appellant is that the decision of the trial court is contrary to law.

It seems proper to first consider the assertion that this lease conferred upon the appellant the right to perpetual renewals. The law does not favor perpetual leases. A lease will not be construed as conferring a right to perpetual renewals unless it clearly so provides, in language so plain and unequivocal as to leave no doubt that such was the intention and purpose of the parties. A lease will, if possible, be so construed as to avoid a perpetuity by renewal. 32 Am. Jur., Landlord and Tenant, §968, p. 813; 51 C.J.S., Landlord and Tenant, §61, p. 606; 39 A. L. R. 275, Anno. 279; *Brush* v. *Beecher* (1896), 110 Mich. 597, 68 N. W. 420; *Tischner* v. *Rutledge* (1904), 35 Wash. 285, 77 Pac. 388; *Diffenderfer* v. *Board of Public Schools* (1894), 120 Mo. 447, 25 S. W. 542.

In construing a lease for the purpose of ascertaining the intention of the parties, the court will, if pos-

sible, give effect to all its parts. The entire instrument will be considered and its meaning will be determined from a consideration of all its provisions taken together as a whole. All clauses, terms and provisions must be considered in connection with the rest of the lease. *Kann* v. *Brooks* (1913), 54 Ind. App. 625, 101 N. E. 513; 51 C. J. S., Landlord and Tenant, §232e, p. 852.

The lease provides that:

"... the lessee shall, at his option, be entitled to the right and privilege of renewing this lease with and under all the terms and conditions thereof, successively, providing that said lessee shall, at least thirty (30) days before the expiration of any two year period of this lease, or any successive renewals thereof, give written notice of his intention so to renew to the lessors; and that upon the 3rd or any subsequent renewal the lessors may, at their option, increase the annual rental over and above the rent herein reserved of Six Hundred ($600.00) Dollars per year in the sum of Sixty ($60.00) Dollars per year for any two year period thereafter."

It must be conceded that the foregoing language, in isolation, would be strongly indicative of an intention to confer upon the lessee the right to renew the lease indefinitely. We note, however, that the original term and the renewals are for two-year periods only and the lease, with the exception of the provision for successive renewals, contains covenants that usually appear only in short term leases. Nowhere in the instrument do we find any of the appropriate and apt words ordinarily used to create a perpetual lease, such as "forever," "for all time," "in perpetuity," etc. We cannot agree that the giving of the right to "successive renewals" means that such renewals are available to the appellant forever and without end. The

word "successive" imports concatenation. It does not define duration.

The lease provides that the lessee "at the expiration of this lease herein made or any renewal thereto, will yield up said premises to the lessors in as good condition as when the same shall be entered upon by said lessee. . . ." This provision, while appropriate in short term leases, seems totally inconsistent with the idea that the parties had in mind a term which might last several centuries. The use to which the lessee may put the premises is restricted to "conducting a general merchandising business," which would not seem to be a covenant such as one would expect to find in a lease in perpetuity. Construed as a lease in perpetuity it could serve to tie up this property forever for one particular and narrow use, regardless of whether, after the passing of many years, the location might make the property much more useful and valuable for other purposes. The lease provides for the payment of rentals "to said lessors or their duly authorized agent, E. Leitzan of Hammond, Indiana," yet it could scarcely have been contemplated that their agent Lietzan would live forever. The rent is fixed at $600 per year subject to the provision that "upon the 3rd or any subsequent renewal the lessors may at their option increase the annual rental, . . . in the sum of Sixty ($60.00) Dollars per year for any two-year period thereafter." If this language were construed to limit the lessors to but one increase in rent for but one renewal period, it would seem to be an unreasonable provision in a lease in perpetuity. If construed to entitle them to an increase of $60 per year in perpetuity, after the 3rd renewal, the rent in time would become infinite.

For obvious reasons no lease which limits the right to renew to the lessee himself could be construed as a

lease in perpetuity. Here the initial term is granted to "Ira B. Geyer, and to his heirs, assigns, executors and administrators," but when we come to the renewal clause the privilege is extended to the lessee only. His heirs, assigns, etc. are not mentioned. It is not necessary to a covenant running with the land that the words heirs, assigns, etc. be used, but the use, the manner of use, or the failure to use those words may be most important to the discovery of the intention of the parties. The inclusion of those words in one place, and their omission in another, may be most significant. See *Brush* v. *Beecher, supra; Watts* v. *Bruce* (1923), 245 Mass. 531, 139 N. E. 650; *Union Trust Co.* v. *McGinty* (1912), 212 Mass. 205, 98 N. E. 679. Considering this, and much of the other language of the lease which we will not pause to point out, it seems to us that the right to renew the lease was not extended to those in privity with the lessee, but instead was personal to him.

We conclude, from an examination and consideration of all of the provisions of the lease contract, that it does not so clearly provide for perpetual renewals as to leave no doubt that such was the purpose and intention of the parties.

The appellant urges the proposition, however, that even though the lease is not one which extends the right to perpetual renewals, it does expressly grant the right to a *second* renewal, and it is his right to a second renewal, and that alone, upon which the decision of this case depends. The general rule is that a lease which provides for more than one renewal will be given effect and enforced, 32 Am. Jur., Landlord and Tenant, §966, p. 812; note 123 A. S. R. 462, but a provision in a lease in general terms for a renewal or continuance of the lease will be construed as providing for only one renewal. 32 Am. Jur., Landlord and Ten-

ant, §968, p. 813; 51 C. J. S., Landlord and Tenant, §61, p. 605; *Hallock* v. *Kintzler* (1943), 142 Ohio St. Rep. 287, 51 N. E. 2d 905; *Diffenderfer* v. *Board of Public Schools, supra.*

It is true the lease here provides that "upon the 3rd or any subsequent renewal the lessors may, at their option, increase the annual rental over and above the rent herein reserved of Six Hundred ($600.00) Dollars per year in the sum of Sixty ($60.00) Dollars per year for any two year period thereafter," but we cannot agree that the lease thereby specifically provides for a third renewal, and that it must, therefore, of necessity include the right to a second renewal. The provision does not expressly grant the right to a third or subsequent renewal, nor does it purport to do so. Bearing in mind that the lease should not be construed as a lease in perpetuity if it can be construed otherwise, the provision must be considered only as a recognition of the fact that the lease *might* be renewed three or more times and to provide for an increased rental in that event. Since the covenant for renewal does not authorize renewals in perpetuity, it must be limited to a single renewal in the absence of language clearly authorizing a different number.

We have held that the lease does not confer the right to perpetual renewals. If, in fact, the lease does extend to the lessee the right to more than one renewal but less than the right to renew in perpetuity, the number of renewals to which the lessee would be entitled is not spelled out by the lease. The lease would, therefore, be so indefinite and uncertain in that regard that the provision would be unenforceable. 51 C. J. S., Landlord and Tenant, §56b, p. 596; 32 Am. Jur., Landlord and Tenant, §958, p. 806; *Abeel* v. *Radcliff* (1816), 13 Johnson's N. Y. Rep. 297, 7 Am. Dec.

377; *Anderson et al.* v. *Hall et ux.* (1930), 155 S. C. 320, 152 S. E. 521.

We conclude that the appellant was not entitled to a second renewel of the lease and the judgment must be and it is affirmed.

Emmert, J., concurs with opinion.

## CONCURRING OPINION

EMMERT, J.—I agree with the result reached by the majority opinion, and the construction that the covenant for renewals did not provide for perpetual renewals. However, the lease only provided for renewals to be exercised during the lives of the landlords, the husband being still living at the time the option for renewal was exercised for the term now in litigation. This term ended April 30, 1949, and since the surviving landlord died January 19, 1948, further options to renew were extinguished.

NOTE.—Reported in 103 N. E. 2d 199.