## Egger v. First National Bank of Newville

*Harold S. Irwin, Jr.*, for plaintiffs.
*John McCrea, III*, for defendant.

SHUGHART, *P.J.*, April 28, 1981—Plaintiffs brought an action in ejectment to recover possession of a portion of a lot of land identified as Tract No. 2 in plaintiffs' complaint and to recover the fair market rental value for the time defendant wrongfully possessed the land. Defendant contends it is lawfully in possession of the lot pursuant to a perpetual lease entered into with plaintiffs in 1971. The pleadings are closed, and plaintiffs have moved for judgment on the pleadings. No facts are disputed. The issue of law to be decided is whether the written agreement of August 15, 1971 (plaintiffs' exhibit A) created a perpetual lease terminable only at the option of the lessee, or whether the lease provided for an estate for years which was followed by a tenancy from year to year.

Plaintiffs and defendant own adjoining lots of land in the Borough of Newville, on which is located a paved parking lot. On August 15, 1971, the parties entered into a written agreement which allowed each to share in the use of the parking lot.[1] Paragraphs 4 and 7 of the written agreement provide for the duration of the lease (one year), while also granting the lessee (defendant) the option and privilege to extend the agreement. These provisions read as follows:

"4. In consideration of an annual rental of two Hundred ($200.00) Dollars paid by the Lessee to the Lessor, the Lessor hereby demises and leases to the Lessee said parking area described in Paragraph 1

1. Paragraphs 5 and 6 of the lease delineate the rules governing the use of the parking lot.

above from August 15, 1971, through August 14, 1972.

7. Lessee shall have the option and privilege of extending this agreement for successive one-year periods at an annual rental of Two Hundred ($200.00) Dollars by tendering to the Lessor said annual rental on or before the 15th day of August of each succeeding term."

Defendant has been in possession of the parking lot from August 15, 1971, to the present. On July 9, 1980, plaintiff sent a letter to defendant terminating the lease effective August 15, 1980—expiration date of the then-current term. Instead of surrendering possession, defendant tendered the annual rental of $200 to plaintiffs before August 15, 1980,[2] and remained in possession of the land. Plaintiffs, therefore, brought this action in ejectment.

The agreement of August 15, 1971, did not create a perpetual lease. Covenants for unlimited renewals tending to create a perpetual lease are not favored in the law, and for a lease to be construed to give that effect, the intent of the parties must be expressed in unequivocal terms: Sterle v. Galiardi Coal & Coke Co., 168 Pa. Superior Ct. 254, 77 A. 2d 669 (1951). "There must be some peculiar and plain language before it will be assumed that the parties intended to create [a perpetuity]." Winslow v. Baltimore and Ohio Railroad Company, 188 U.S. 646, 655 (1903). The written agreement of August 15, 1971, does not express a clear intent to create a perpetual lease. None of the words commonly used

2. Paragraph 8 of the lease provides: "Lessee shall be deemed to have exercised the option and privilege herein set forth unless it shall, at least thirty (30) days before the expiration of the then current term, give written notice to the Lessor that it does not desire to exercise the privilege and option of renewing this lease agreement."

to create a perpetuity—forever, for all times, in perpetuity, everlasting, or similar words—is found. We concur with the court in Geyer v. Lietzan, 230 Ind. 404, 103 N.E. 2d 199 (1952), that the word "successive" does not create a perpetuity.[3] "The word 'successive' imports concatenation. It does not define duration." Id. at 410, 103 N.E. 2d at 201.

Furthermore, when looking at the written agreement as a whole, we are unable to find that a perpetuity was created. In construing a written agreement, the court must consider the entire document, not just one covenant therein.

"It is well settled doctrine that a contract must be construed as a whole, and the intention of the parties is to be collected from the *entire* instrument and not from detached portions, it being necessary to consider all of its parts in order to determine the meaning of any particular part as well as of the whole." Mowry v. McWherter, 365 Pa. 232, 239, 74 A. 2d 154, 158 (1950) (emphasis in original). The absence of a rent escalation clause suggests that plaintiffs did not intend to agree to a perpetual lease, terminable only at the will of defendant. The intent to lease indefinitely for a fixed rental amount, the value of which would eventually erode to an insignificant amount due to inflation, will not be implied. Moreover, the limit of any extension to a one-year period also indicates a lack of intent to grant unlimited renewals. The parties did not explicitly agree to a perpetual lease, and this court will not imply one.

Since the agreement did not provide for perpetual extensions, we hold that plaintiffs were obligated to extend the agreement, at defendant's option, for a single one-year period only. The duration of the

3. Paragraph 7 of the lease provides for extension of the agreement for "successive one-year periods."

agreement was for a one-year period (August 15, 1971 through August 14, 1972) with the option and privilege of extending for one-year periods. Notwithstanding the use of the plural, for the policy against perpetuities to have effect, such renewal clauses are considered fully satisfied after one renewal. E.g., Winslow v. Baltimore and Ohio Railroad Company, supra; Pettit v. Tourison, 283 Pa. 529, 129 Atl. 587 (1925). Thus, defendant lost its unilateral option of extending the lease in August 1973. At this point, a tenancy from year to year was created.

A tenancy from year to year, a kind of periodic tenancy, is continuous and of indefinite duration. Proper notice is required to terminate. They may be created "by express agreement by the parties, or by letting for an indefinite time with rent payable at periodic intervals, or by holding over with the assent of the lessor after the expiration of an estate for years, or by entry into possession under an invalid lease. The creation of such tenancies by express agreement seems to be relatively uncommon although in some areas there is a practise of leasing housing accommodations for a term certain (one year, for example) followed by a tenancy from year to year." Moynihan, Introduction to the Law of Real Property 81 (1962) (footnote omitted). Pennsylvania law adheres to this view. For example, in Routman v. Bohm, 194 Pa. Superior Ct. 413, 168 A. 2d 612 (1961), the court stated that when a tenant "remains in occupancy with the consent of the landlord, paying the same rent as that paid under the lease, he becomes a tenant from year to year." Id. at 415, 168 A. 2d at 613, quoting 21 P.L.E., Landlord and Tenant §72. Thus, on July 11, 1980, when plaintiffs notified defendant of their intention to terminate the lease, defendant possessed the lot under a tenancy from year to year.

In Pennsylvania, a landlord who desires to recover possession of real property from a tenant who possesses the property under a lease from year to year must give proper notice. E.g., Weaver v. Mundy, 4 Lyc. 113 (1953). Section 501 of The Landlord and Tenant Act of April 6, 1951, P.L. 69, as amended by the Act of April 28, 1978, P.L. 202, 68 P.S. §250.501, requires three months notice. The undisputed facts in this case are that plaintiffs' notice to defendant came less then two months prior to the end of the period of tenancy. Plaintiffs therefore failed to provide adequate notice, a requisite to termination of the lease.

### ORDER

And now, April 28, 1981, for the reasons set forth in the foregoing opinion, it appearing that insufficient notice of termination of the lease was given, judgment for plaintiffs is denied, costs to be divided between the parties.