George SMYRNIOTIS, Appellant–
Defendant,

v.

Sue Ann MARSHALL, Appellee–
Plaintiff,

and

Jeff Smith, Jerry Kohart, Remax Tri–
State Realty, Inc., John Stock,
Appellees–Defendants.

No. 76A03–0005–CV–174.

Court of Appeals of Indiana.

Feb. 21, 2001.

Rehearing Denied April 19, 2001.

*Id.* at 401.

Latrialle Wheat, Angola, IN, Attorney for Appellant.

Robert T. Keen, Jr., Diana C. Bauer, Miller Carson Boxberger & Murphy, LLP, Fort Wayne, IN, Attorneys for Appellee.

## OPINION

DARDEN, Judge

### STATEMENT OF THE CASE

George Smyrniotis appeals the trial court's order granting Sue Ann Marshall's motion for summary judgment in an action seeking to evict Smyrniotis from the home he had been leasing from her.

We affirm.

### ISSUES

1.  Whether summary judgment should have been granted to Marshall.

2.  Whether the trial court erred in ordering Smyrniotis to vacate the premises.

### FACTS

In April of 1997, Marshall bought a home on Crooked Lake for $335,000.00. She and her husband told a real estate agent they were interested in having the property leased for a year at the rate of $1,000.00 monthly. The agent subsequently reported that Smyrniotis was interested in leasing the property for $800 monthly for an extended period of time. Marshall was agreeable to a fourteen-month lease. A lease was executed by Smyrniotis and the agent for Marshall. It contained the following terms:

> I. LEASE: Tenant is hereby granted immediate and continued possession of the above described property as of the date these agreements are signed and continuing for fourteen (14) months to be calculated with August being the first month. This lease shall constitute a month to month lease subject to and subordinate to all specific terms herein provided. Tenant shall be allowed to terminate this lease with sixty (60) days written notice to the landlord.

> \*      \*      \*      \*      \*      \*

> IX. Tenant reserves the right to renew lease on a month to month basis at the same fee. . . . .

(R. 18, 19).

Smyrniotis made the $800 monthly payments specified. After thirteen months, on August 28, 1998, Marshall sent Smyrniotis a notice to quit, indicating that he should "deliver up possession of the premises . . . on or before midnight September

30, 1998." (R. 238). Smyrniotis responded by stating that he would exercise his right under the lease to renew. On October 1st, Marshall filed a complaint for ejectment, to quiet title, for criminal trespass and for attorney's fees. A hearing was held October 13th on Marshall's request for immediate possession; the trial court denied her request that same day, finding no "dire necessity" therefor. (R. 180).

Subsequently, Marshall filed a motion for summary judgment on July 14, 1999, contending that as a matter of law the lease was a "general month to month lease and not a lease in perpetuity" and she was entitled to "all other just and proper relief in the premises." (R. 102). Her memorandum in support of her motion further claimed that the month to month tenancy had terminated and she was "entitled to possession." (R. 111). Smyrniotis' response to the motion to summary judgment asserted that pursuant to the lease, only he had the "right to terminate the lease," which was a valid "lease[ ] in perpetuity." (R. 124, 125).

On March 30, 2000, the trial court issued an order finding that the lease was not a lease in perpetuity but rather one for fourteen months; that after fourteen months it became a tenancy from period to period, allowing termination by a notice to quit giving a one month period; and that Marshall had given Smyrniotis a notice to quit with one month's notice after expiration of the lease's fourteen month period. The trial court granted Marshall's motion for summary judgment and ordered Smyrniotis to vacate the property in ten weeks, on May 20, 2000.

## DECISION

### 1. Summary Judgment

In reviewing a trial court's ruling on a motion for summary judgment, we apply the same standard as the trial court. *Francis v. Yates,* 700 N.E.2d 504, 506 (Ind. Ct.App.1998). Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is

entitled to judgment as a matter of law. *Id.* Although facts may not be in dispute, summary judgment is inappropriate if conflicting inferences arise from undisputed facts. *Id.* On appeal, the appellant bears the burden of proving that the trial court erred in determining that there are not genuine issues of material fact and the moving party was entitled to judgment as a matter of law. *Id.*

Construction of a written contract is a question of law for which summary judgment is particularly appropriate. *Id.* A lease is construed in the same manner as any other contract. *Stout v. Kokomo Manor Apartments,* 677 N.E.2d 1060, 1064 (Ind.Ct.App.1997). If a contract is ambiguous solely because of language used in the contract and not because of extrinsic facts, then construction of the contract is purely a question of law to be determined by the court. *Francis,* 700 N.E.2d at 506. See also *McEnroy v. St. Meinrad School of Theology,* 713 N.E.2d 334, 337 (Ind.Ct. App.1999), *trans. denied* 726 N.E.2d 313, *cert. denied* 529 U.S. 1068, 120 S.Ct. 1675, 146 L.Ed.2d 484 (2000).

Smyrniotis contends the trial court's conclusion erred as a matter of law in applying *Geyer v. Lietzan,* 230 Ind. 404, 103 N.E.2d 199 (1952), because the trial court held the lease did "not mean what both parties [to the lease] understood it to mean." Smyrniotis' Brief at 19. He directs us to his affidavit stating his intent that the lease be perpetual and testimony of Marshall at the hearing for immediate possession indicating that she had read the lease to give him the right to renew indefinitely. However, contrary to Smyrniotis's contention, Marshall's testimony does not establish that Marshall *intended* the lease to provide him the right to perpetual renewals.

The trial court was guided by our supreme court's consideration of a purported perpetual lease in *Geyer,* wherein it declared as follows:

The law does not favor perpetual leases. A lease will not be construed as conferring a right to perpetual renewals unless

it clearly so provides, in language so plain and unequivocal as to leave no doubt that such was the intention and purpose of the parties. A lease will, if possible, be so construed as to avoid a perpetuity by renewal.

*Geyer*, 103 N.E.2d at 200. The court then noted various provisions in the lease that seemed "totally inconsistent with the idea" of a perpetual lease, one such provision being for a single raise of the rent. *Id.* Here, there is no provision for the rent to ever be increased. Moreover, one term of this lease provides that the landlord "is to maintain roof in a leak-free condition and pay for any repairs to furnace, water heater and structure." (R. 13). This provision is particularly unlikely to be included in a lease in perpetuity. Further, in *Geyer* the lease did not provide for the "assigns" of the tenant to renew the lease, and the court concluded that "no lease which limits the right to renew to the lessee himself could be construed as a lease in perpetuity." *Id.* at 201. Similarly, the lease here purports to provide only Smyrniotis the right to renew the lease.[1] Finally, in *Geyer*, our court considered the absence of "the appropriate and apt words ordinarily used to create a perpetual lease, such as 'forever,' 'for all time,' 'in perpetuity,' etc." *Id.* Smyrniotis directs us to no such language in this lease, and we find it to contain no express indication that the lease provided for renewals in perpetuity. The trial court did not err in its conclusion that pursuant to *Geyer*, this lease did not establish a lease in perpetuity.[2]

**2. Order to Vacate**

Smyrniotis also claims the trial court erred in ordering him to vacate the premises because "[n]owhere in [Marshall's] motion [for summary judgment] or in the supporting memorandum did [she] make demand for an order of possession." Smyrniotis' Brief at 22. As noted in FACTS, her memorandum in support did assert that she was entitled to possession. Smyrniotis further argues that he was not given a "fair opportunity to present evidence on the issue of whether, even if the Lease gives Marshall the right to terminate the Lease, she has done all that the law requires her to do in order to exercise that right." *Id.* However, no contention in this regard was brought to the attention of the trial court when it expressly discussed an order to vacate at the close of the summary judgment hearing. Rather, Smyrniotis' counsel simply indicated that he would need "a reasonable period of time" to vacate, and the trial court set a date ten weeks later. (Supp. R. 63). A party may not submit to a procedure without objection and then claim the same to be erroneous. *Clark v. Madden*, 725 N.E.2d 100, 105 (Ind.Ct.App.2000). We find no error here.

We affirm.

RILEY and ROBB, JJ., concur.

---

1. Also, the provision states, "Tenant reserves the right to renew lease...." It has long been the law in Indiana that "[a] lease of real estate is a contract by which, ordinarily, the owner divests himself of the possession and use of his property, in favor of the lessee, upon a valid consideration, for a definite term." *Spiro v. Robertson*, 57 Ind.App. 229, 106 N.E. 726, 728 (1914) (citing *Haywood v. Fulmer*, 158 Ind. 658, 32 N.E. 574 (1892)). Hence, we question the meaning of a term that purports to "reserve" to the tenant a right in property when the tenant holds no rights in that property at the time the contract is created.

2. Smyrniotis also argues that the trial court's conclusion was erroneous as a matter of law because Marshall "ratified" what she understood to be a perpetual lease when "[f]or more than a year she accepted monthly payments pursuant to the terms of the lease." Brief at 17. We fail to comprehend how the acceptance of rent payments for thirteen months could ratify a term purported to establish perpetuity. This is especially perplexing when one considers that the trial court initially denied Marshall's request for immediate possession in October of 1998 and Smyrniotis continued to occupy the property until after the matter was disposed of by the trial court in March of 2000.