[No. 5144–3–II.   Division Two.   July 14, 1982.]

OAK BAY PROPERTIES, LTD., *Appellant*, v. SILVERDALE
SPORTSMAN'S CENTER, INC., *Respondent*.

*Kimberly Osenbaugh,* for appellant.

*Gary Chrey,* for respondent.

WORSWICK, J.—Oak Bay Properties, Ltd. (Oak Bay), a landlord, appeals an order granting summary judgment in favor of Silverdale Sportsman's Center, Inc. (Silverdale), its tenant, the effect of which was to confer on Silverdale a perpetual right to renew the lease between them. We reverse.

On October 15, 1977, Silverdale entered into a lease with Oak Bay's predecessor; Silverdale drafted the lease. In June 1979, Oak Bay bought the property and, on January 9, 1980, served a notice to terminate tenancy as of February 1. Silverdale refused to surrender the premises. On February 15, 1980, Oak Bay instituted an unlawful detainer action contending that the lease provided for a 1–year term from October 15, 1977, to October 15, 1978, a 1–year renewal from October 15, 1978 to October 15, 1979, and thereafter either a month–to–month tenancy terminable on 20–days' notice or a tenancy at will. Silverdale answered claiming it had the perpetual right to renew on a year–to–year basis.

Both parties moved for summary judgment. Each claimed the lease was unambiguous. Each argued, in the alternative that, if its position was not correct, the lease was ambiguous and testimony should be taken to determine the intent of the parties as to its duration. The trial court granted Silverdale's motion.

The issue before us, stated in the simplest way, is whether or not the lease is ambiguous. We hold that it is as a matter of law.

As a general rule, the meaning of a lease should be deduced from its language. If the language is ambiguous, parol evidence may be used to clear up the problem. Ambiguous means capable of being understood in one of

two or more senses. *Rainier Nat'l Bank v. Inland Mach. Co.*, 29 Wn. App. 725, 631 P.2d 389 (1981). Ambiguities are usually viewed in a light most favorable to the party who did not draft the instrument. *Wilkins v. Grays Harbor Comm'ty Hosp.*, 71 Wn.2d 178, 427 P.2d 716 (1967). Here, the trial court apparently applied the usual principles and concluded that provisions of this lease concerning duration were not ambiguous. The problem is that where there is a contention that a lease is perpetually renewable, the usual principles do not apply in the usual way.

■ This observation is illustrated by the early case of *Tischner v. Rutledge*, 35 Wash. 285, 288–89, 77 P. 388 (1904), in which our Supreme Court said:

Whether or not a lease providing for perpetual renewals is valid, is a question upon which the authorities are not agreed, though perhaps the weight is with the holding that such leases are valid. On principle, it would seem that where a person has the right to convey, in fee absolute, his whole estate, he could convey in the same manner a part of it less than the whole. *But, be this as it may, the authorities are uniform on the proposition that the law does not favor perpetual leases of the character claimed for this one, and that the intention to create such lease must be expressed in clear and unequivocal language, and not be left to mere inference. Courts will, also, whenever it is possible without doing violence to the plain meaning of words, so construe the language used as to avoid a perpetuity by renewal.*

(Italics ours.) The language in the *Tischner* lease concerning duration was similar to that of the lease here and, by the "usual rules," could have been interpreted as the trial court here interpreted it. Nevertheless, the Supreme Court further said at page 289:

It does not employ the terms, "in perpetuity," "forever," or words of similar import, such as one would expect to find in instruments granting perpetual rights. Moreover, the phrase used, which is thought to create the perpetual right, is of itself likely to conceal its real meaning. *When we speak of a thing as continuing from year to year, it is*

*only on second thought that we conclude it means forever.*

(Italics ours.)

Although the cases stop short of announcing a presumption against perpetual leases, clearly they are disfavored and leases are interpreted to avoid this result whenever possible. *See generally* 50 Am. Jur. 2d *Landlord and Tenant* § 1171 (1970); 51C C.J.S. *Landlord and Tenant* § 616 (1968); Annot., 31 A.L.R.2d 623 (1953). Against this background of judicial distaste, the cases[1] have focused, as we must, on various important components of a lease to see whether they are clearly and unequivocally consistent with the notion of perpetuity.

█ Here, paragraph 3 provides that the term shall be 1 year "with renewable option." Paragraph 12 provides that if the lessee has fully performed, it shall have the *option to renew* from October 15, 1978, to October 15, 1979, and "the right to renew annually thereafter." Renewal provisions of leases which, although not conferring the right to perpetual renewals, grant the right to more than one, without specifying the number, have been held so indefinite and uncertain as to be unenforceable. 50 Am. Jur. 2d *Landlord and Tenant* § 1171 (1970). A lease provision calling for renewal in general terms has been construed as providing for only one renewal, and thereafter, at most, a periodic tenancy. *Lonergan v. Connecticut Food Store, Inc.,* 168 Conn. 122, 357 A.2d 910 (1975). Furthermore, it would appear that a lease that requires the lessee to take the positive act to renew rather than take the positive act to terminate the lease indicates the parties did not intend to enter into a perpetual lease. *See Morris v. Healy Lumber Co.,* 46 Wash. 686, 91 P. 186 (1907) (lease giving lessee right to hold property from year to year until lessee terminated construed as giving lessee perpetual right to renew); *President & Trustees of Ohio Univ. v. Athens Livestock Sales, Inc.,*

---

[1]Washington cases on this subject are few. Therefore, it has been necessary for us to go considerably afield to find useful authority.

115 Ohio App. 21, 179 N.E.2d 382 (1961). The renewal provisions of this lease are more consistent with a right to one renewal and a periodic tenancy thereafter than with a right of perpetual renewal.

Paragraph 2 provides that the premises are to be used for conducting a sporting goods store and for no other purpose without written consent of the lessor. This restriction on the use of the premises indicates the parties more probably contemplated a short–term lease, even though the lessee could change the use with the lessor's permission. *Geyer v. Lietzan,* 230 Ind. 404, 103 N.E.2d 199 (1952) (lease provision restricting use of premises to conducting a "general merchandising business" is inconsistent with intent to create perpetual lease).

Contrary to the conclusion reached by the court below, the lessee's obligation under paragraph 5 to keep the premises in good repair and quit the premises in a neat and clean condition at the expiration of the term indicates a short–term rather than a long–term lease. *Tischner v. Rutledge,* 35 Wash. at 289. The provisions in paragraph 5 that the lessee shall not be responsible for major outside and structural repairs and paragraph 8, which gives the lessor an option to rebuild or not if the premises are destroyed, appear to be inconsistent with a lessee's right to renew perpetually.

Paragraph 4 provides that the monthly rental shall increase by 5 percent over the monthly rental for the prior year. The trial court relied heavily on this provision. However, a rent escalation clause does not by itself indicate the parties intended a perpetual lease. *See Geyer v. Lietzan, supra* (lease was not perpetual even though rent increased by $60 every 2 years). In short, this lease does not measure up to the clear and unequivocal standard and is, therefore, ambiguous as a matter of law.

Appellant has invited us to declare the duration of this lease, citing *Robroy Land Co., Inc. v. Prather,* 95 Wn.2d 66, 622 P.2d 367 (1980). We decline. Our function is to interpret the lease, not write it. The appropriate outcome here is

a trial in which the intent of the parties as to duration can be proved by competent evidence.

Reversed and remanded for proceedings consistent with this opinion.

REED, C.J., and SWANSON, J., concur.

Reconsideration denied August 23, 1982.

Review denied by Supreme Court November 22, 1982.