CARDER, INC., Plaintiff–Appellant and Cross–Appellee,

v.

Mary Ellen CASH, Sanford Brothers Co., and William Cash, Defendants–Appellees and Cross–Appellants,

and

Robert Root, as Personal Representative of the Alma Sanford Estate, Defendant–Appellee,

and

Paulin, Inc. and Ron Peterson LLC, Third–Party Defendants–Appellants,

and

John F. Carder and Ira Paulin, Third–Party Defendants,

and

Concerning Roberta Earley, Attorney–Cross–Appellant.

No. 02CA0046.

Colorado Court of Appeals, Div. III.

Nov. 20, 2003.

As Modified on Denial of Rehearing April 8, 2004.

Certiorari Denied Sept. 7, 2004.

Bullock Law Office LLC, James R. Bullock, La Junta, Colorado, for Plaintiff–Appellant and Cross–Appellee.

Roberta Earley, Colorado Springs, Colorado, for Defendants–Appellees and Cross–Appellants and Attorney–Cross–Appellant.

No Appearance for Defendant–Appellee.

Darla Scranton Specht, Lamar, Colorado, for Third–Party Defendants–Appellants.

Opinion by Judge MARQUEZ.

In this action involving a lease for mining operations, plaintiff, Carder, Inc. (lessee), appeals the trial court's judgment denying lessee's claims for conversion, punitive damages, breach of quiet enjoyment, breach of warranty, and wrongful possession and unlawful forcible detainer against defendants, Mary Ellen Cash, Sanford Brothers Co., William Cash, and Robert Root, as personal representative of the Alma Sanford Estate (collectively landowners). Lessee's joint venturers, third-party defendants, Paulin, Inc. and Ron Peterson LLC, join in the appeal. The Cashes and Sanford Brothers cross-appeal the trial court's order denying their counterclaims for trespass, breach of contract, and theft by deception. Landowners and their attorney, Roberta Earley, also appeal the trial court's award of attorney fees and C.R.C.P. 11 sanctions. We affirm in part and vacate in part, and remand with directions.

In December 1993, lessee and landowners entered into a lease for the quarrying, mining, removing, and marketing of sand, gravel, and rock from acreage owned by landowners. The lease provides that lessee "shall have the right and option to renew this Lease for successive periods of 5 years each."

In November 1998, landowners, believing lessee had substantially violated the terms of the lease, gave notice to lessee of nonrenewal or, alternatively, renewal under additional requirements. A month later, lessee sent notice to landowners that it was exercising its option to renew the lease for an additional five-year term. Lessee continued in possession of the property, but in April 1999, landowners placed locks on the gates. On April 15, 1999, a confrontation took place on the property between some of the landowners and one of lessee's employees. Lessee then discontinued its mining operations and filed this action asserting claims for declaratory and injunctive relief. Lessee later amended its complaint to add claims for damages.

The trial court determined the lease was renewed for an additional period of five years and granted lessee possession of the leased premises. It later found in favor of lessee on its claim for breach of contract and awarded it $116,262, a portion of the damages sought, but denied its other claims. Lessee filed a motion to amend findings pursuant to C.R.C.P. 59, but the court's order granting that motion issued beyond the period authorized by C.R.C.P. 59(j) and will not be considered here.

## I. Reformation

Lessee contends, landowners agree, and we concur, that the trial court committed reversible error when it reformed the parties' lease agreement by adding terms and conditions.

Reformation of a written instrument is appropriate only when the instrument does not represent the true agreement

of the parties. The purpose of reformation is to give effect to the parties' actual intentions. *Md. Cas. Co. v. Buckeye Gas Prods. Co.,* 797 P.2d 11, 13 (Colo.1990).

The trial court essentially reformed the lease to require lessee to communicate in writing to landowners its intent to renew or not to renew the lease no later than May 1, 2003. It then declared that the lessor "shall have to and including June 1, 2003 within which to object to the renewal or to propose new terms and conditions for the proposed renewed lease." And "in the event the parties cannot agree to the terms and conditions of the proposed renewed lease by July 1, 2003, the parties shall submit those issues to arbitration under the rules and regulations of the American Arbitration Association."

Because we agree with the parties that these additions were in error, we vacate that portion of the judgment.

## II. Lease Renewal

However, we reject landowners' contention that the renewal provision is invalid as a matter of law. We agree with the trial court that the lease is not ambiguous and that lessee renewed the lease under the original terms and conditions.

█ When contracts are optional in respect to one party, they are strictly construed in favor of the party that is bound and against the party that is not bound. *Sohio Petroleum Co. v. Grynberg,* 757 P.2d 1125 (Colo.App.1988). However, a lease, like other contracts, is to be reasonably interpreted according to the apparent intention of the parties. *Schneiker v. Gordon,* 732 P.2d 603 (Colo.1987); *Brown v. Hoffman,* 628 P.2d 617 (Colo.1981).

█ A general covenant to extend or renew implies an additional term equal to the first and upon the same terms and conditions. *Yamin v. Levine,* 120 Colo. 35, 206 P.2d 596 (1949).

█ Further, where a lease contains no provision requiring the lessee to give notice of its election to extend the lease, no notice is necessary; the lessee's continuing in possession and tendering the monthly rental suffi-ciently indicate its desire to extend the lease for the additional term. *Thomas & Son Transfer Line, Inc. v. Kenyon, Inc.,* 40 Colo. App. 150, 574 P.2d 107 (1977), *aff'd sub nom. Cohen v. Thomas & Son Transfer Line, Inc.,* 196 Colo. 386, 586 P.2d 39 (1978); *see Nicklis v. Nakano,* 118 Colo. 317, 195 P.2d 723 (1948)(where lease provides for renewal, mere holding over suffices as election to hold for another term).

█ Because the lease unambiguously provides an option to renew and does not require notice of election to exercise the option, the trial court properly allowed renewal. With the exception of the number of successive renewal terms, the record and case law also support a finding of timely renewal under the same terms and conditions in the original lease.

### A. Successive Renewals

Landowners contend that lessee's renewing the lease perpetually under the same terms, as urged by lessee and ordered by the court, is commercially unreasonable and would violate the rule against perpetuities. We conclude that the lease could be renewed for only one five-year term. We need not address the rule against perpetuities as the cases holding that perpetual lease awards are not favored in the law do so for reasons independent of the rule.

█ Perpetual leases are not favored in the law. A lease will not be construed as conferring a right to perpetual renewals unless its language is so clear and unequivocal that it leaves no doubt that such was the intention of the parties. *McLean v. United States,* 316 F.Supp. 827 (E.D.Va.1970); *Geyer v. Lietzan,* 230 Ind. 404, 103 N.E.2d 199 (1952); *Burke v. Permian Ford–Lincoln–Mercury,* 95 N.M. 314, 621 P.2d 1119 (1981); *Gleason v. Tompkins,* 84 Misc.2d 174, 375 N.Y.S.2d 247 (Sup.Ct.1975).

█ A perpetuity will not be regarded as created from an ordinary covenant to renew. There must be some peculiar and plain language before the court will assume that the parties intended to create it. *McLean v. United States, supra; see Winslow v. Baltimore & Ohio R.R.,* 188 U.S. 646, 23 S.Ct.

443, 47 L.Ed. 635 (1903)(covenant to renew is fully carried out by one renewal; otherwise a perpetuity is provided for).

Several jurisdictions have addressed the issue whether the term "successive" is sufficient to infer that the parties intended to establish the right to a lease in perpetuity. The majority have concluded that the term "successive," without further indications in the lease, does not establish the right to an indefinite or perpetual lease. *McLean v. United States, supra; Geyer v. Lietzan, supra; Lattimore v. Fisher's Food Shoppe, Inc.,* 313 N.C. 467, 329 S.E.2d 346 (1985); *see Burke v. Permian Ford–Lincoln–Mercury, supra.*

■■■ The general rule is that a lease providing for renewal in general terms will be construed as providing for only one renewal. *McLean v. United States, supra; Geyer v. Lietzan, supra; Burke v. Permian Ford–Lincoln–Mercury, supra; Lattimore v. Fisher's Food Shoppe, Inc., supra; Oak Bay Props., Ltd. v. Silverdale Sportsman's Ctr., Inc.,* 32 Wash.App. 516, 648 P.2d 465 (1982).

For example, the lease in *Burke, supra,* providing the "right to renew said lease for successive like terms" was held to grant a renewal period of one year. And provisions in a lease that "if the lessee has fully performed, it shall have the option to renew from [dates] and the right to renew annually thereafter" were held consistent with a right to one renewal in *Oak Bay, supra.*

In *Carlson v. Bold Petroleum, Inc.,* 996 P.2d 751 (Colo.App.2000), a division of this court addressed an easement agreement providing it "shall be renewable in 3–year periods." The division noted there was nothing improper or unusual about an easement being of perpetual duration. However, it distinguished the grant of an easement from a lease agreement and noted that the trial court did not find the agreement remained perpetually in effect.

■■■ Here, although the lease contains an option to renew, it does not specify under what terms the renewal will take place. The lease simply provides an option to renew for "successive periods of 5 years each," and a reasonable interpretation of this option is

that it is renewable for one period. *See McLean v. United States, supra* (right to "successive renewals," without specification of number of renewals, is satisfied with one renewal).

### B. Statute of Frauds for Mineral Leases and Options

■■■ Landowners also contend the lease violates the statute of frauds and Colorado law regarding options and mineral leases. We are not persuaded.

The lease is in writing, expresses the consideration, and is signed by both parties. Thus, it comports with the requirements of § 38–10–108, C.R.S.2003.

Further, §§ 38–42–101 and 38–42–102, C.R.S.2003, do not require that the lease renewal be recorded to be of legal effect. Those statutes address options to purchase mineral or royalty interests during the term of a lease, not options to renew. Thus, they are inapplicable.

### C. Substantial Violations

Alternatively, landowners contend that even if the lease renewal provisions are valid, substantial violations of the lease justified its termination under § 13–40–107.5, C.R.S.2003, or at least the imposition of new terms addressing those violations. We are not persuaded.

Section 13–40–107.5(2), C.R.S.2003, provides that an implied term of every lease of real property in the state is that a tenant shall not commit a substantial violation while in possession of the premises. A "substantial violation" includes certain defined acts. However, landowners' concerns regarding the lack of accountings, refusal to weigh gravel, and encroachment do not appear to be included in that statutory definition.

■■■ Where a lessee's right to renew is dependent upon the performance of the covenants or conditions contained in the lease, the nonperformance of those covenants or conditions defeats the right to renew. *Brown v. Hoffman, supra; see also Deeb v. Canniff,* 29 Colo.App. 510, 488 P.2d 93 (1971)(landlord's action of locking out lessee

terminated lease). Failure to perform an essential requirement of a contract may defeat the entire agreement and entitle the lessor to clear title to the property. *See Sohio Petroleum Co. v. Grynberg, supra.*

■ Whether a breach of a contract is material, and therefore excuses further performance by the other party, is a question of fact. In deciding that question, the trier of fact should consider the extent to which an injured party will obtain substantial benefit from the contract, as well as the adequacy of compensation in damages. *Kaiser v. Mkt. Square Disc. Liquors, Inc.,* 992 P.2d 636 (Colo.App.1999).

■ Here, the trial court found that lessee encroached on landowners' land. However, it also concluded that lessee's encroachment on a maximum of 1.7 acres out of a permitted area of 160 acres was not a material breach of the lease, particularly when the area had been reclaimed. Thus, it concluded that landowners could not prove damages.

Moreover, the trial court properly dismissed landowners' trespass claim on the basis that the Colorado Mined Land Reclamation Board had jurisdiction on that issue.

■ The court's findings of fact will not be reversed on appeal unless they are so clearly erroneous as not to have support in the record. *Golden Lodge No. 13 v. Grand Lodge,* 80 P.3d 857 (Colo.App. 2003).

Here, the court found that landowners had filed a complaint with the Board and that pursuant to a cease and desist order from the Board, lessee had completed the reclamation work in the area of encroachment. The court then concluded that landowners had elected their remedy by filing the complaint with the Board and that they had been unable to prove damages since the reclamation had been completed.

■ Further, the court found, with record support, that no contamination occurred which would constitute a breach of the lease and also found, on conflicting evidence, that loads that were to be weighed were in fact weighed and that all royalty payments based upon these loads were properly remitted.

Because these findings are supported by the record, we find no error in the trial court's ruling. Therefore, lessee committed no substantial breach that would allow landowners to defeat the lease.

To the extent they were prevailing parties on landowners' efforts to terminate the lease under § 13-40-107.5, lessee and third-party defendants may apply to the trial court for an award of attorney fees incurred in the trial court. See § 13-40-123, C.R.S. 2003. any award is strictly limited to fees incurred in defending against the § 13-40-107.5 claim.

## III. Conversion

Lessee next contends the trial court committed reversible error when it dismissed its claim for conversion as prohibited by the economic loss rule. Lessee's conversion claim was based on its allegation that it was deprived of the use of equipment located on the property. We perceive no reversible error.

■ Conversion is any distinct, unauthorized act of dominion or ownership exercised by one person over personal property belonging to another. *Mari v. Wagner Equip. Co.,* 721 P.2d 1208 (Colo.App.1986).

■ A party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law. *Town of Alma v. Azco Constr., Inc.,* 10 P.3d 1256 (Colo. 2000); *see Grynberg v. Agri Tech, Inc.,* 10 P.3d 1267 (Colo.2000).

The court must determine, at the outset of the lawsuit, the type of duty that has allegedly been breached. *See Town of Alma v. Azco Constr., Inc., supra.*

■ Here, even if under some circumstances a lessee may have an independent action for conversion, the trial court noted that lessee alleged loss of rental value of the equipment wrongfully confined and did not allege physical harm to persons or property. Although the court stated that the economic loss rule serves to preclude recovery, it also found there had been no independent duty

allegedly violated to support the tort of conversion.

 Further, in its separate findings of fact, conclusions of law, entries of judgment, and orders, the court addressed lessee's request to recover the reasonable rental value for the loss of use of its equipment which was confined to the Cash pit during the lockout. The court found that lessee had reasonable opportunities to remove its equipment and that it failed to present evidence that it attempted to mitigate its damages by either investigating alternative uses for the equipment or by requesting permission to remove it. The court concluded that lessee could not recover on its claim for lost use of equipment.

We conclude that under such circumstances the court did not err in dismissing the claim for conversion.

## IV. Quiet Enjoyment and Warranty

We also reject lessee's contention that the trial court erred by dismissing its claims for breach of the covenant of quiet enjoyment and breach of warranty.

### A. Covenant of Quiet Enjoyment

 Lessee argues that by virtue of the breach of the covenant of quiet enjoyment, it is entitled to an award of attorney fees as an element of damages. We disagree.

 Unless expressly agreed otherwise, there is an implied covenant of quiet enjoyment in every lease of real property in Colorado. *W. Stock Ctr., Inc. v. Sevit, Inc.,* 195 Colo. 372, 578 P.2d 1045 (1978). Breach of the covenant of quiet enjoyment occurs when the lessor's disturbance of the lessee's possession renders the premises unfit for occupancy for the purposes leased or deprives the lessee of the beneficial enjoyment of the premises, causing the lessee to abandon them. Actual abandonment is not required. *Bedell v. Los Zapatistas, Inc.,* 805 P.2d 1198 (Colo.App.1991).

Here, the court properly ruled that the damages allegedly sustained for breach of this covenant are the same as those alleged in the breach of contract claim. Thus, any claim for attorney fees as an element of these damages must also fail.

### B. Warranty of Title

Nor did the trial court err in rejecting lessee's claim for breach of warranty.

 This claim alleges that the lease contains a warranty that defendants Mary Ellen Cash and Sanford Brothers Co. are owners of the premises, but that in fact, Mary Ellen Cash had quitclaimed her interest to other defendants.

The trial court concluded there could be no breach of warranty because no third person asserted a title interest in the leased premises. It further concluded that the source of the duty was the lease and that lessee failed to prove any damages resulting from the alleged breach of warranty. It also held that lessee was precluded from recovery on this claim by the economic loss rule. We conclude that the economic loss rule is inapplicable, but that lessee has failed to demonstrate any damages.

Citing *Swartz v. Bianco Family Trust,* 874 P.2d 430 (Colo.App.1993), third-party defendants contend that a breach of warranty action is appropriate even when a plaintiff must sue to establish ownership of the property leased. *Swartz,* however, is inapposite because it involved an agreement creating a preemptive right to purchase among four property owners, one of whom sold his interest in the property to an outside party.

Here, there is no evidence that a third party asserted a claim to the leased property, and lessee fails to demonstrate how it suffered any loss even if the parties signing the lease were not the actual owners of the land. Thus, we perceive no error.

## V. Wrongful Possession and Unlawful Forcible Detainer

 Lessee contends the trial court erred in denying its claim for wrongful possession and unlawful forcible detainer by determining that service of a notice to quit was a prerequisite to an action for forcible detainer. We conclude that even if a notice to quit were not required, lessee fails to articulate any prejudice resulting from the trial court's

ruling. As discussed below, lessee was awarded all damages it proved. Further, the record does not support a determination that lessee and third-party defendants are entitled to attorney fees as prevailing parties under this claim. Although its complaint was later amended, lessee originally asserted claims for declaratory and injunctive relief. By order dated September 5, 2000, the trial court granted lessee the right to immediate possession of the leased premises. Thus, the court granted possession independently of the claim for wrongful possession and unlawful forcible detainer. *See Beeghly v. Mack,* 20 P.3d 610 (Colo. 2001); *Reitze v. Humphreys,* 53 Colo. 171, 125 P. 522 (1912). Thus, we decline to address this contention further.

## VI. Damages

We also are not persuaded by lessee's contention that the court failed to award lost profits consistent with its historical revenues and expenses, lost rental value of its property, and "lost use" of its equipment.

In a breach of contract action, the objective is to place the injured party in the position it would have been in but for the breach. The prevailing party is therefore entitled to recover the amount of damages necessary to accomplish that objective. The amount of damages cannot be based on speculation or conjecture; however, damages need only be determined with reasonable certainty. *Kaiser v. Mkt. Square Disc. Liquors, Inc., supra; see McDonald's Corp. v. Brentwood Ctr., Ltd.,* 942 P.2d 1308 (Colo. App.1997).

Sufficient evidence must be presented to compute a fair approximation of future loss. The damages awarded must be traceable to and the direct result of the wrong to be redressed. *McDonald's Corp. v. Brentwood Ctr., Ltd., supra; see Pomeranz v. McDonald's Corp.,* 843 P.2d 1378 (Colo.1993).

The trial court, as fact finder, has broad discretion in determining the amount of damages, and its decision will not be disturbed on appeal absent an abuse of discretion. *McDonald's Corp. v. Brentwood Ctr., Ltd., supra; see Wilson & Co. v. Walsenburg Sand & Gravel Co.,* 779 P.2d 1386 (Colo.App. 1989).

## A. Lost Profits

The trial court here limited damages to a period of approximately eleven months. We conclude its award of lost profits is supported by the record.

When recovery of lost net earnings is sought, the plaintiff need only provide a reasonable basis for computation, using the best evidence obtainable under the circumstances that will enable the trier of fact to arrive at a fairly approximate estimate of the loss. Evidence of past performance may form the basis for a reasonable prediction of future profits. *Airborne, Inc. v. Denver Air Ctr., Inc.,* 832 P.2d 1086 (Colo.App.1992); *see Tull v. Gundersons, Inc.,* 709 P.2d 940 (Colo. 1985).

Damages sustained by a business must relate to loss of net profits; they may not be speculative, remote, imaginary, or impossible of ascertainment. Such profits are anticipated profits that have their foundation in the past experience of the concern that suffered the loss. Proof of lost gross profits is not sufficient; expenses of operation must be shown to establish net profits. *Lee v. Durango Music,* 144 Colo. 270, 355 P.2d 1083 (1960).

Here, the trial court awarded lessee $79,197 for lost profits including interest. Lessee's witness was accepted by the court as an expert in the field of accounting, with a subspecialty in damage calculations. The trial court found that much of the expert's testimony was speculative and, therefore, awarded lost profits based only on the expert's estimate of lost gross revenue, multiplied by the expert's estimate of average net profit percentage. Upon this record, we perceive no abuse of discretion.

## B. Lost Use of Equipment

The trial court found that lessee sought to recover the reasonable rental value for loss of use of its equipment. The court also found, with record support, that lessee had reasonable opportunities to remove its

equipment from landowners' land and failed to mitigate its damages either by investigating alternative uses for the equipment or by requesting permission to remove it. Accordingly, we perceive no error. *See Wilson & Co. v. Walsenburg Sand & Gravel Co., supra* (evidence regarding damages related to alleged loss of rental revenue from idle equipment was speculative and unrecoverable); *see also Francis v. Steve Johnson Pontiac-GMC–Jeep, Inc.,* 724 P.2d 84 (Colo.App. 1986)(lost use damages proved by plaintiff's purchase of additional vehicle).

## VII. Cross–Appeal

We disagree with landowners' contentions on cross-appeal relating to attorney fees, imposition of C.R.C.P. 11 sanctions, exclusion of an aerial survey, dismissal of certain parties and claims, and failure to hold a jury trial.

## A. Attorney Fees

Landowners contend that lessee and third-party defendants are not entitled to attorney fees. We disagree.

■ A party generally cannot recover attorney fees absent a specific contractual, statutory, or procedural rule authorizing that recovery. *Allstate Ins. Co. v. Huizar,* 52 P.3d 816 (Colo.2002).

■ Here, the trial court awarded attorney fees to lessee and third-party defendants under C.R.C.P. 11 for landowners' reckless allegations of wrongdoing without competent investigation or factual support. Because the record supports the court's determination, the award was proper.

## B. C.R.C.P. 11 Sanction

■ We find no error in the award of attorney fees against Roberta Earley, landowners' attorney, personally.

■ C.R.C.P. 11 requires that every pleading must be signed, either by a party or, when the party is represented, by an attorney. The rule also requires the imposition of an appropriate sanction whenever the court determines that a pleading has been signed in violation of the rule. If there is an adequate factual basis for the statements in the pleading, a trial court abuses its discretion in imposing sanctions under C.R.C.P. 11. *Jensen v. Matthews–Price,* 845 P.2d 542 (Colo.App.1992).

Here, the trial court found a violation of C.R.C.P. 11 and ordered attorney fees as a sanction against Earley for the following conduct: allegations as to the personal conduct of individuals who had not been joined in the action; insistence on relitigating the declaratory and lease validity issues when the court had made it clear that those issues were moot; reckless allegations of wrongdoing by individuals and attorneys without a showing of competent investigation or facts to support the allegations; and a request for fines or imprisonment without any showing to support such a request.

After review of the record, we conclude the sanction was an appropriate use of the trial court's discretion under C.R.C.P. 11.

## C. Aerial Survey

We also reject landowners' contention that their theft claim was valid and, in that regard, the trial court should have admitted the aerial survey.

■ A trial court has broad discretion in deciding the admissibility of evidence, including its relevancy, probative value, and prejudicial effect. Therefore, we will not disturb the trial court's evidentiary ruling absent an abuse of discretion, which occurs only if the ruling is manifestly arbitrary, unreasonable, or unfair. *E–470 Pub. Highway Auth. v. 455 Co.,* 3 P.3d 18 (Colo.2000).

■ The determination whether a witness is qualified to render an opinion helpful to the trier of fact is left to the discretion of the trial court and will not be disturbed absent a clear abuse of discretion. CRE 702 governs a trial court's determination as to whether expert testimony should be admitted. The inquiry should focus on whether the substance of the testimony will be helpful to the trier of fact and whether the witness is qualified to render an expert opinion on the subject in question. *People v. Johnson,* 74 P.3d 349 (Colo.App.2002); *see Brooks v. People,* 975 P.2d 1105 (Colo.1999).

██ Even though the proffered testimony might be admissible under CRE 702, a court may still consider whether its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. *Brooks v. People, supra; see also W. Cities Broad., Inc. v. Schueller,* 830 P.2d 1074 (Colo.App.1991), *aff'd,* 849 P.2d 44 (Colo. 1993).

██ Here, the trial court concluded that certain portions of the testimony of landowners' expert were based on the opinions of others, rather than on facts and data. The expert testified that he relied on the calculations and measurements of an aerial surveying company. He admitted that it was subject to a degree of error and that he did not feel a need to do any site surveying to verify what the company had done. He stated that he was not involved in the preparation of the topographical map, nor did he make the determination and calculation as to the material removed. Further, he testified there was a disclaimer on the aerial map stating that the volume calculation did not meet national map accuracy standards.

Because the trial court's conclusion is supported by the record, we perceive no abuse of discretion.

### D. Dismissal of Parties and Claims

██ Landowners also contend the trial court erred in dismissing John F. Carder and Ira Paulin individually and the claims for breach of fiduciary duty or civil conspiracy from the lawsuit and in not holding third-party defendants, Ron Peterson LLC and Paulin, Inc., liable. We reject these contentions.

The trial court found, with record support, that although the original agreement designated Ira Paulin individually, the intent of the parties was to contract with "Ira Paulin, Inc." and that the agreement was altered by appropriate action of the corporate entity, Paulin, Inc.

Furthermore, landowners present no argument as to their assertions regarding John F. Carder and Ron Peterson LLC.

### E. Jury Trial

Finally, landowners contend that a jury trial should have been held in this case. We disagree.

██ Trial by jury in civil actions is not a matter of right in Colorado. In an action for the recovery of specific real or personal property, breach of contract, and injuries to persons or property, a party upon demand must receive a trial by jury. C.R.C.P. 38; *Mountain States Tel. & Tel. Co. v. DiFede,* 780 P.2d 533 (Colo.1989); *see Kaitz v. Dist. Court,* 650 P.2d 553 (Colo.1982)(character of the action determines whether issue of fact is to be tried to a court or to a jury).

██ However, the original complaint fixes the nature of the action. If the action is purely legal in nature, the parties are entitled to a jury trial; if not, the action may be tried by the court. Where legal and equitable claims are joined in the complaint, the court must determine whether the basic thrust of the action is equitable or legal in nature. *Miller v. Carnation Co.,* 33 Colo. App. 62, 516 P.2d 661 (1973); *see also Miller v. Dist. Court,* 154 Colo. 125, 388 P.2d 763 (1964)(compulsory counterclaim does not defeat nature of plaintiff's complaint with regard to jury trial).

██ Here, lessee's original complaint sought declaratory judgment and injunctive relief. Therefore, we conclude the trial court did not err in denying landowners' request for a jury trial. *See Motz v. Jammaron,* 676 P.2d 1211 (Colo.App.1983).

Even if we were to consider the contents of the amended complaint, we would find no error. While the amended complaint adds several legal claims, a number of those claims are integrally related to and depend upon resolution of the initial equitable claims. Given the relative importance to lessee of the various equitable and legal claims asserted, the trial court properly concluded that the basic thrust of lessee's complaint was equitable in nature.

The judgment is vacated to the extent that it adds terms and conditions to the lease agreement and to the extent it would allow more than one renewal term. In all other respects, the judgment is affirmed. The case is remanded for an award to lessee and third-party defendants of attorney fees they incurred in defending against landowners' claim under § 13-40-107.5 in the trial court.

Judge ROY and Judge DAILEY concur.