**Rick COOK & Daniel Funk,**
**Appellants,**

v.

**ADAMS COUNTY PLAN**
**COMMISSION,**
**Appellee.**

No. 01A04–0611–CV–646.

Court of Appeals of Indiana.

Aug. 15, 2007.

Neal R. Blythe, Mefford & Weber, P.C., Auburn, IN, Attorney for Appellants.

Jeremy W. Brown, Burry, Herman, Miller & Brown, P.C., Decatur, IN, Attorney for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellants–Respondents, Rick Cook and Daniel Funk (the Appellants), appeal the trial court's Order, denying their Verified Petition for Writ of Certiorari in favor of Appellee–Respondent, the Adams County Plan Commission (the Plan Commission).

We reverse.

### ISSUE

The Appellants raise one issue on appeal which we restate as follows: Whether the trial court erred when it found that a one-year lease for real estate which contained provisions for an annual automatic renewal and a notice of cancellation, constituted a long term lease in accordance with the Adams County Zoning and Land Use Ordinance Regulation of Intensive Livestock Operations.

### FACTS AND PROCEDURAL HISTORY

On March 1, 2006, Jonas L.J. Hilty (Hilty) submitted an application to the Plan Commission, requesting a permit to construct a hog finishing facility capable of holding a thousand hogs at any given time. Along with his application, Hilty submitted drawings of the finishing unit as well as drawings of the waste storage system.

Pursuant to the Adams County Zoning and Land Use Ordinance Regulation of Intensive Livestock Operations (the Ordinance), Hilty's proposed livestock operation required ownership or a long term lease of at least one acre of land per ten hogs, or one hundred acres, for spreading the hogs' manure. *See* Ordinance 2–16–3(C) and 2–16–2(B)(3). Hilty only owned twenty acres upon which he could spread some of the waste. Therefore, prior to the submission of his application, he entered into a lease for an additional one hundred and twenty-five acres with Ruth Wilder (Wilder). The terms of this lease, provide in pertinent part:

The term of this Lease shall be for a period of 1 year from the date hereof and shall be automatically renewed for each successive year thereafter unless

notice of cancellation is given by certified mail at least 180 days before the anniversary date hereof, which is the expiration date of this agreement, and a copy of this notice of termination forwarded to the [Plan Commission].

The purpose of this Lease is to comply with the "Intensive Livestock Ordinance" of Adams County, Indiana. [Hilty] herein is conducting or proposes to conduct an intensive livestock operation on his real estate near to the real estate subject of this Lease and the purpose of this Lease is to provide [Hilty] with sufficient application lands as defined in section 14(h) of such "Intensive Livestock Ordinance." The parties recognize that this is a condition precedent to the granting of a permit to [Hilty] to conduct an intensive livestock operation on his real estate and it is the intention of both parties that the Lease be executed and presented to the Administrators of the [Plan Commission] to promote and induce the [grant] of such a permit to [Hilty].

It is understood and agreed that this Lease shall not be cancelled, altered or amended without the consent of the Administrator of Zoning in Adams County, Indiana. It is further understood and agreed that an executed copy of this Lease shall at all times be kept on file with the Administrator of Zoning in Adams County, Indiana, and that such Administrator shall be provided with a copy of all notices of termination of this Lease as and when the same are [served] upon a party hereto and that the Administrator of Zoning in Adams County, Indiana shall be provided with a copy of all proposed renewal leases and alterations thereunto prior to the execution of the same.

(Appellants' App. p. 69).

On April 20, 2006, the Plan Commission conducted a public hearing on Hilty's application. Appellants, together with several other neighbors, attended the hearing and expressed their concern with Hilty's proposal. As homeowners proximate to Hilty's hog farm, they encouraged the Plan Commission to deny Hilty's application based on the smell of the hogs, the ·decrease in property values, the hauling of manure on county roads, flies, and the possibility of contaminated well water. At the end of the hearing, the Plan Commission unanimously approved Hilty's application to erect a hog finishing facility.

On May 19, 2006, Appellants filed a Verified Petition for Writ of Certiorari alleging that the Plan Commission issued Hilty's permit illegally as his application did not fully comply with the Ordinance. On June 7, 2006, the Plan Commission filed its response and Motion to Dismiss. On September 25, 2006, the trial court heard arguments and, on October 10, 2006, the trial court entered its Order dismissing Appellants' Petition for Writ of Certiorari. In its Order, the trial court held, in pertinent part:

7. That [Appellants] argue that said lease is not a long term lease and that said lease is for a period of one year only and is not being policed by the [Plan Commission].

8. That [the Plan Commission] argues that said lease was prepared by the Plan Commission Office and was prepared for the purpose of complying with the [ ] Ordinance. [The Plan Commission] further argues that the language in the lease provides that it can only be canceled with at least a 180 day notice before the anniversary of the covenants and conditions of the lease shall immediately subject [Hilty] to a revocation of his permit to conduct an intensive livestock operation on his real estate.

* * *

12. The [c]ourt having reviewed the Lease Agreement attached as Exhibit F to the [Appellants'] Verified Petition for Writ of Certiorari is not "illegal" as provided by [I.C. § 36–7–4–1003].

13 That the Lease Agreement in question clearly provides that it is an automatically renewing year to year lease and can only be cancelled by the parties by notice given by certified mail at least 180 days before the anniversary date of the lease agreement, with a copy of said notice of termination forwarded to the [Plan Commission].

14. That said Lease Agreement further provides that the lease cannot be cancelled, altered or amended without the consent of the Administrator of Zoning in Adams County, Indiana.

15. That said Lease further provides that any violation of the covenants and conditions of the Lease Agreement shall immediately subject [Hilty] to revocation of [his] permit to conduct an intensive livestock operation on his real estate as provided in the [Ordinance].

16. That there is no definition contained in the [Ordinance] for a long term lease and the [c]ourt finds that an automatically renewing year to year lease that cannot be cancelled without notice to the [Plan Commission] clearly suffices for purposes of condition of a long term lease agreement.

(Appellants' App pp. 6–8).

The Appellants now appeal. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Standard of Review*

■■■■ Indiana Code section 36–7–4–1016 provides that decisions of an area plan commission are subject to the same process of certiorari review as are local zoning decisions. *See also Area Plan Com'n, Evansville–Vanderburgh Co. v. Hatfield,* 820 N.E.2d 696, 698 (Ind.Ct.App. 2005), *trans. denied.* When reviewing a decision of a zoning board, we are bound by the same standard of review as the certiorari court. *S & S Enterprises, Inc. v. Marion County Bd. of Zoning Appeals,* 788 N.E.2d 485, 489 (Ind.Ct.App.2003), *trans. denied.* Indiana Code Section 36–7–4–1003 provides in pertinent part that "[e]ach person aggrieved by a decision of the board of zoning appeals or the legislative body may file with the circuit or superior court of the county in which the premises affected are located, a verified petition setting forth that the decision is illegal in whole or in part and specifying the grounds of the illegality." Thus, when reviewing a decision of a board of zoning appeals, the trial court must determine if the board's decision was incorrect as a matter of law. *Brownsburg Conservation Club, Inc. v. Hendricks Co. Bd. of Zoning Appeals,* 697 N.E.2d 975, 977 (Ind.Ct.App. 1998). The trial court may not conduct a trial *de novo* or substitute its decision for that of the board. *Id.* On appeal, however, to the extent the trial court's factual findings were based on a paper record, this court conducts its own *de novo* review of the record. *Equicor Dev., Inc. v. The Westfield–Washington Twp. Plan Comm'n,* 758 N.E.2d 34, 37 (Ind.2001). If the trial court holds an evidentiary hearing, this court defers to the trial court to the extent its factual findings derive from the hearing. *Id.*

### II. *Analysis*

The sole issue before us revolves around the Ordinance's requirements for obtaining an intensive livestock permit. Pursuant to Ordinances 2–16–2(B)(3) and 2–16–3(C), Hilty's proposed intensive livestock operation required ownership or a long term

lease to at least one acre of land per ten hogs, or one hundred acres, for spreading the hogs' manure. As Hilty did not own the necessary acreage upon which to spread the manure of his proposed one thousand hog facility, Ordinance 2–16–3(C)(3) mandates him to present the Plan Commission with a long term lease granting permission to apply waste on the leased ground. To that end, Hilty entered into a lease with Wilder.

The parties now dispute whether the term of the lease—a base term of one year with automatic annual renewals—satisfies the "long term" obligation of the Ordinance. Appellants, focusing on the plain and ordinary meaning of "long term," assert that a one year lease cannot be in compliance with the Intensive Livestock provisions of the Ordinance. The Plan Commission, on the other hand, relying on the lease's annual automatic renewal covenant, claims that the lease must be characterized as a long term lease for purposes of the Ordinance. However, neither party proffers case law in support of their respective positions and besides making a bald assertion pro or contra the purported long term character of the lease, they do not offer us any relevant additional arguments, let alone a compelling one.

■ Initially, we note that a lease is construed in the same manner as any other contract. *Smyrniotis v. Marshall*, 744 N.E.2d 532, 534 (Ind.Ct.App.2001), *reh'g denied, trans. denied.* Indiana follows the four corners rule, namely, that extrinsic evidence is not admissible to add to, vary, or explain the terms of a written instrument if the terms of the instrument are susceptible of a clear and unambiguous construction. *Univ. of So. Ind. Found. v. Baker*, 843 N.E.2d 528, 532 (Ind.2006). A document is not ambiguous simply because parties disagree about a term's meaning. *Id.* Language is ambiguous only if reason-

able people could come to different conclusions as to its meaning. *Id.*

Our own research failed to disclose any case law on point; in fact, there is scarcely any case law discussing the elemental differences between a short and long term lease. Nevertheless, focusing on the automatic renewal language incorporated in the lease's term, we are reminded of our supreme court's dislike of perpetual leases. In its pivotal decision, *Geyer v. Lietzan*, 230 Ind. 404, 103 N.E.2d 199, 200–01 (Ind. 1952), our supreme court cautioned as follows:

> The law does not favor perpetual leases. A lease will not be construed as conferring a right to perpetual renewals unless it clearly so provides, in language so plain and unequivocal as to leave no doubt that such was the intention and purpose of the parties. A lease will, if possible, be so construed as to avoid a perpetuity by renewal.

The *Geyer* court analyzed the following renewal option:

> the lessee shall, at his option be entitled to the right and privilege of renewing this lease with and under all the terms and conditions thereof, successively, providing that said lessee shall, at least thirty (30) days before the expiration of any two year period of this lease, or any successive renewals thereof, give written notice of his intention to so renew to the lessors; and that upon the 3rd or any subsequent renewal the lessors may, at their option, increase the annual rental over and above the rent herein reserved of Six Hundred ($600.00) Dollars per year in the sum of Sixty ($60.00) Dollars per year for any two year period thereafter.

*Id.* at 201 (quotation marks omitted). Initially, the court recognized that the renewal option, read in isolation, "would be strongly indicative of an intention to confer

upon the lessee the right to renew the lease indefinitely." *Id.*

However, turning to an examination of the lease as a whole, the supreme court concluded that it contained provisions that were inconsistent with a lease that might last for centuries. These provisions included: (1) the requirement that the premises be returned in as good condition as they were at the commencement of the lease; (2) the restriction as to the use of the premises; (3) the requirement that the payment of rentals be made to the lessors or the duly authorized agent, identified by name; (4) a fixed rent for the first three years, which could be increased by $60.00 per year for any two-year period thereafter; and (5) the renewal clause was limited to the lessee only, *in contrast* to the initial term, which included the lessee's heirs, assigns, executors, and administrators. *Id.* at 201–02. The *Geyer* court found that "from an examination and consideration of all the provisions of the lease contract, [the lease] does not so clearly provide for perpetual renewals as to leave no doubt that such was the purpose and intention of the parties." *Id.* at 202.

Besides focusing on terms more commonly found in short term leases, the supreme court, as its salient consideration, remarked on the absence of "any of the appropriate and apt words ordinarily used to create a perpetual lease, such as 'forever,' 'for all time,' 'in perpetuity,' etc." *Id.* at 201. Therefore, as the lease failed to contain this unequivocal language but rather included provisions inconsistent with a perpetual lease, the *Geyer* court refused to construe the agreement in perpetuity. *Id.* at 202.

■ We find the same is true of the lease before us. Here, the lease is remarkably limited in its terms, and provisions typically found in a lease are absent. First and foremost, the agreement is silent with regard to its lease price, or any method to calculate such. Furthermore, paragraph 3 of the lease stipulates that the sole purpose of the lease is to comply with the Ordinance by providing Hilty with sufficient application land. As stated by the *Geyer* court, the restriction on the use of the premises indicates that the parties more probably contemplated a short term lease because "[c]onstrued as a lease in perpetuity it could serve to tie up this property forever for one particular and narrow use, regardless of whether, after the passing of many years, the location might make the property much more useful and valuable for other purposes." *Id.* at 201. However, unlike *Geyer,* the lease does contain a general proviso extending and binding the lease's covenants to the "heirs, executors and administrators of both [Wilder] and [Hilty]." (Appellants' App. p. 69).

Whereas the renewal language in *Geyer* specified a two year lease with successive renewals provided the lessee gives notice of his intent to renew thirty days before the expiration of the term; here, we are faced with a one-year base term with automatic renewals for each successive year thereafter unless notice of cancellation is given at least 180 days before the lease's anniversary date. Indiana case law is silent whether an automatic renewal provision without requiring a positive act to renew is indicative of a lease in perpetuity. Some courts in other states have answered this question affirmatively. *Oak Bay Properties, Ltd. v. Silverdale Sportsman's Center, Inc.,* 32 Wash.App. 516, 648 P.2d 465, 467 (1982), *rev. denied* (a lease requiring a lessee to take a positive act to renew rather than take the positive act to terminate the lease indicates the parties did not intend to enter into a perpetual lease. Conversely, perpetuity is then established when the lessee is required to actively

terminate the lease); *President & Trustees of Ohio Univ. v. Athens Livestock Sales, Inc.,* 115 Ohio App. 21, 179 N.E.2d 382, 384 (Ohio Ct.App.1961) (lease requiring positive act by lessee by providing notice of termination is considered a perpetual lease); *Morris v. Healy Lumber Co.,* 46 Wash. 686, 91 P. 186, 187 (Wash. 1907) (lease giving lessee right to hold property from year to year until lessee terminated is construed as giving lessee perpetual right to renew).

However, mindful of the *Geyer* court's prominent reliance on the parties' unequivocal intention to enter into a perpetual lease, as mainly indicated by the use of phrases as "forever," "for all time," and "in perpetuity," we cannot conclude that the lease agreed upon by Wilder and Hilty is a perpetual lease. The mere use of the word "automatic" does not in and of itself obligate Hilty to renew the lease perpetually, particularly where the language, considered together with the other lease provisions, shows that such was not the intent of the parties.

▉ Even though we conclude that Hilty's lease is not a perpetual lease, the renewal provision still awards him with a defacto limitless number of renewals. Nevertheless, the general rule is that a lease which provides for more than one renewal will be given effect and enforced, but a provision in a lease in general terms for a renewal or continuance of the lease will be construed as providing for only one renewal. *Geyer,* 103 N.E.2d at 202. Considering our conclusion that the lease is not perpetual, the renewal provision must be construed only as a recognition of the fact that the lease *can* be renewed. As the covenant for renewal cannot authorize renewals in perpetuity, it must be limited to a single renewal in the absence of language clearly authorizing a different number. *See id.*

Accordingly, based on our analysis, the lease agreement at bar must be read as providing for a base term of one year with an automatic renewal of one additional year unless notice of termination is given at least one hundred and eighty days before the anniversary date. Thus, essentially amounting to a two-year lease, we refuse to characterize this agreement as long term. Therefore, as the lease clearly does not satisfy the provisions of Ordinances 2–16–2(B)(3) and 2–16–3(C), we reverse the trial court's Order.

### CONCLUSION

Based on the foregoing, we conclude that the trial court erred when it found that a one-year lease for real estate which contained provisions for an annual automatic renewal and a notice of cancellation, constituted a long term lease in accordance with the Adams County Zoning and Land Use Ordinance Regulation of Intensive Livestock Operations Reversed.

NAJAM, J., dissents with separate opinion.

BARNES, J., concurs in result with separate opinion.

NAJAM, Judge, dissenting.

I respectfully dissent from the majority's holding that the lease in question is illegal under the Adams County Zoning and Land Use Ordinance Regulation of Intensive Livestock Operations ("Ordinance"). The discussion of what constitutes a perpetual lease is an unnecessary digression. The only question before us is whether the lease here is a long-term lease under the Ordinance.

Our standard of review on such issues requires deference to the Adams County Plan Commission's interpretation of "long term." Specifically, we have stated:

Generally, we review questions of law decided by an agency *de novo*. However, an agency's construction of its own ordinance is entitled to deference. The ordinary rules of statutory construction apply in interpreting the language of a zoning ordinance. Under those rules, the express language of the ordinance controls our interpretation and our goal is to determine, give effect to, and implement the intent of the enacting body. When an ordinance is subject to different interpretations, the interpretation chosen by the administrative agency charged with the duty of enforcing the ordinance is entitled to great weight, unless that interpretation is inconsistent with the ordinance itself. If a court is faced with two reasonable interpretations of an ordinance, one of which is supplied by an administrative agency charged with enforcing the ordinance, the court should defer to the agency. Once a court determines that an administrative agency's interpretation is reasonable, it should end its analysis....

*Hoosier Outdoor Adver. Corp. v. RBL Mgmt., Inc.*, 844 N.E.2d 157, 163 (Ind.Ct. App.2006) (citations omitted), *trans. denied*. The trial court properly applied that standard of review and agreed with the Plan Commission's determination. We cannot say either that the Plan Commission erred as a matter of law or that the trial court erred in its exercise of judicial review.

Again, the Ordinance does not require a perpetual lease, only a long-term lease. The purpose of the Ordinance is to ensure that livestock operations will have enough time to spread the waste generated by those operations. Hence, by "long term," the Ordinance requires only a term sufficiently long to satisfy that waste-disposal requirement. While I agree with Judge Barnes that five years would be a reasonable amount of time to satisfy that require-ment, I cannot say that one year is unreasonable.

This is not to say that under any and all circumstances a one-year lease is a "long term" lease. Here, however, the lease "shall not be cancelled, altered or amended without the consent" of the Plan Commission, and a violation of the terms of the lease will subject Hilty's permit to revocation. Appellant's App. at 69. Indeed, "the purpose of this Lease is to provide [Hilty] with sufficient application lands as defined in section 14(h) of [the Ordinance]. The parties recognize that this is a condition precedent to the granting of a permit to [Hilty]." *Id.* That is, the permit and the acreage operate in tandem. Because the lease is tied directly to Hilty's permit, the lease serves its intended purpose. Thus, I defer to the Plan Commission determination that the one-year base term is long enough to meet the Ordinance's requirement. *See Hoosier Outdoor*, 844 N.E.2d at 163.

Hilty's lease satisfies Ordinance 2–16–3(C)(3), requiring an applicant for an intensive livestock permit to establish a "long term" lease when that applicant does not own at least one-half of the acreage on which waste will be spread. As such, Hilty's application also satisfies Ordinance 2–16–2(B)(3), which establishes acreage per livestock requirements. Accordingly, I would affirm the trial court.

BARNES, Judge, concurring in result with separate opinion.

I concur in result but write separately because I believe the only issue is whether Hilty's automatically renewable one-year lease is a long-term lease. I acknowledge that we must give some deference to the Plan Commission's interpretation of "long-term." *See Hoosier Outdoor Adver. Corp. v. RBL Mgmt., Inc.*, 844 N.E.2d 157, 163

(Ind.Ct.App.2006), *trans. denied.* I simply cannot agree that it is reasonable to call a one-year lease a long-term lease. Common sense tells me one year is not long-term. *See Merriam Webster's Collegiate Dictionary* 687 (10th ed.1994) (defining long term as "occurring over or involving a relatively long period of time" and "of, relating to, or constituting a financial operation or obligation based on a considerable term and esp. one of more than 10 years.").

It seems to me that the public policy underlying the Ordinance is primarily to assure that a hog CAFO has a place to dispose of the manure that is produced by the swine. Adams County, in enacting the Ordinance, had a legitimate interest in attempting to assuage the olfactory senses of those who may be affected by a CAFO operation. The Ordinance calls for a "long-term" lease in order to ensure, I assume, a place to spread the manure for a defined, lengthy, and fixed period of time. The lease at issue here does not do that in my opinion. Despite the necessity of 180–days notice and the approval of the Adams County Administrator of Zoning prior to the cancellation of the lease and the automatic renewal provisions in the lease, this lease could theoretically be terminated after twelve months. These provisions do not provide the necessary assurance to the community that Hilty will have a place to dispose of the waste for the long-term.

It is true that the operation's permit is subject to cancellation if and when there is no place available to spread the manure. I would suggest, however, that 1000 hogs will not magically disappear from a location overnight, their manure will continue to accumulate, and even one day without an outlet for that porcine waste would be too much—especially for downwind neighbors. I believe the lease is not long-term, I would reverse the trial court, and I would insist on a lease of at least five years in order to comply with the Ordinance.